1        **UNITED STATES DISTRICT COURT**
2          **FOR THE DISTRICT OF NEW JERSEY**
   _____
3  RASTELLI PARTNERS, LLC, et al.,

         Plaintiff,
4                                           CIVIL ACTION
         vs.                                NO. 19-cv-05124-NLH-JS
5
   FOFBAKERS HOLDING COMPANY, LLC, et al.,
6
         Defendants.                    Order to Show Cause
7                                          Hearing
   _____
8        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
9        Camden, New Jersey 08101
         February 15, 2019
10       Commencing at 3:24 p.m.

11 **B E F O R E:**        **THE HONORABLE NOEL L. HILLMAN**
                          **UNITED STATES DISTRICT JUDGE**
12
   **A P P E A R A N C E S:**
13

14       HYLAND LEVIN SHAPIRO, LLP
         BY:  DAVID R. DAHAN, ESQUIRE
15       6000 Sagemore Drive, Suite 6301
         Marlton, New Jersey 08053-3900
16       For the Plaintiffs

17       BOCHETTO & LENTZ, P.C.
         BY:  GAVIN P. LENTZ, ESQUIRE
18       1230 Brace Road
         Cherry Hill, New Jersey 08034
19       For the Intervenor Plaintiff

20

21 Certified as true and correct as required by Title 28, U.S.C.,
   Section 753
22
        _/S/ ROBERT T. TATE, CCR, CRR_
23

24     Robert T. Tate, Official Court Reporter
                 Bob@Tate-Tate.com
25                 609-462-4384

```
 1    A P P E A R A N C E S: (Continued)

 2
         LAULETTA BIRNBAUM, LLC
 3       BY:  GREGORY A. LOMAX, ESQUIRE
         591 Mantua Boulevard, Suite 200
 4       Sewell, New Jersey 08080
         For the Defendants
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (In open court at 3:24 p.m..)
 2              THE DEPUTY COURT CLERK:  All rise.
 3              THE COURT:  All right.  Good afternoon.  I'll take
 4    appearances.  This is Rastelli Partners versus FOFBakers
 5    Holding.  For the plaintiff.
 6              MR. DAHAN:  May it please the Court, David Dahan from
 7    the law firm of Hyland Levin Shapiro on behalf of the
 8    plaintiffs, Rastelli Partners, LLC, and Raymond M. Rastelli,
 9    Jr.
10              THE COURT:  All right.  Mr. Dahan, welcome to you,
11    sir.
12              MR. DAHAN:  Thank you, your Honor.
13              MR. LENTZ:  Your Honor, Gavin Lentz.  You granted my
14    motion to intervene.  We're a minority.  We're a 20 percent
15    equity holder in the LLC.
16              THE COURT:  Yes.
17              MR. LENTZ:  DF Ventures is my client.
18              THE COURT:  All right.  Mr. Lentz, welcome to you as
19    well.
20              MR. LOMAX:  Yes, good afternoon, your Honor.  Greg
21    Lomax from the firm of Lauletta Birnbaum on behalf of the
22    plaintiff.  The plaintiff is the largest shareholder of the
23    enterprise.
24              THE COURT:  All right.  You should be over here.
25              MR. LOMAX:  Well, I got sued.  So...
```

```
 1            THE COURT:  Oh, I'm sorry.  I thought you said you
 2    were the plaintiff.
 3            MR. DAHAN:  He did.
 4            MR. LOMAX:  Oh, did I say plaintiff?  I'm sorry.  I
 5    take that back.  I'm the defendant.
 6            THE COURT:  Yes, okay.  You're in the right place and
 7    I should have realized when you told me who your client was
 8    that you're on that side of the V.
 9            MR. LOMAX:  Yeah, I misspoke.
10            MR. DAHAN:  Maybe I sat on the wrong side, your
11    Honor.
12            THE COURT:  Well, Mr. Lentz, did I not grant your
13    motion?
14            MR. LENTZ:  Yes, you granted my motion to intervene.
15            THE COURT:  All right.  Very good.
16        All right.  So, Mr. Lomax, let me start with you.  Mr.
17    Dahan sent me a letter yesterday.  I got a proposed consent
18    order about prejudging the issues.  It seems pretty
19    reasonable.  Is there any reason why you wouldn't sign the
20    consent order on behalf of your client?
21            MR. LOMAX:  Well, here's what happened, your Honor.
22    I was hired Thursday of last week.  I filed the petition to
23    remove.  I got on a plane Monday to go to Rochester, New York
24    to deal with something else.  I read, before I left, I read
25    the order to show cause, the proposed form of order.  I said
```

1    we'll submit to that.  And I wrote the Court a letter Thursday

2    morning and said that we will submit to that.

3         We get the proposed consent order.  There's a lot of

4    little things in there that are problematic because they're

5    inconsistent, our position is, they're inconsistent with the

6    terms of the operating agreement and we don't believe that

7    they're appropriate.

8         We exchanged some minor tweaks to it today, and we

9    reached an impasse on that because there are certain things

10   that we believe are just not appropriate.  Like, for instance,

11   the proposed consent order that was submitted by Mr. Dahan

12   today -- is it Dahan or Dahan?

13         MR. DAHAN:  Dahan.

14         MR. LOMAX:  Dahan, that was submitted today put out

15   two specific areas they want to arbitrate, and the arbitration

16   specifically under the management agreement is to break

17   deadlocks, okay, between managers.  My client is a 50 percent

18   manager, and I believe his client is a 50 percent manager, and

19   a company like that is fraught with deadlocks.  They put in

20   two specific areas that they want to arbitrate.

21         I got back to him and said, well, listen, there's two

22   areas we want to arbitrate, and I put those back in the thing,

23   and they said absolutely not, we're not agreeing to arbitrate

24   those, we filed this lawsuit, and I'll let him say why he's

25   not, but bottom line is, if this is going to arbitration, we

1   agreed, based on this form of order, to send it to

2   arbitration.  Once it goes to arbitration, whatever is

3   arbitrable is a decision for the arbitrator, not for the

4   Court.  We believe our two things are ripe for arbitration, he

5   believes his two things are ripe for arbitration.  Let's go to

6   the arbitrator and let him determine what's ripe and what's

7   not.

8         So, I'm okay with the proposed form of order that was

9   submitted initially, but they want to delineate the playing

10  field before we get to arbitration.  It didn't make any sense

11  to me.

12        They also want to incorporate a term in the, that

13  specific provision, it's provision C of this proposed form of

14  order, that says it's binding arbitration.  Well, the

15  operative document, the operative paragraph 4(g), 4.1(g),

16  doesn't say anything about it being binding.

17        Now, we don't want to agree to something that changes

18  the terms of a negotiated agreement among three parties and

19  basically consent by court order on an application for an

20  injunction to change the terms and then have the court order

21  it.

22        As far as arbitration, or mediation, we will agree to

23  mediate issues.  As is provided under the operating agreement

24  under Section 12, the parties, the members, the individual

25  members, if there's a dispute between the members, they agreed

1   to mediate those and, if that fails, go to court.  Okay?

2   We'll agree to go to mediation.  I think mediation, if I was

3   involved in this case from the very inception, I would have

4   said, hold up, hold up, stop, let's talk, and if we can't work

5   it out, let's mediate some of these things.  Okay?  I wasn't.

6   The cattle was out of the barn.  By the time I got it it was

7   already a lawsuit.

8          It seems to me the appropriate order is the one -- they

9   got it right first, the appropriate order is the one that they

10  submitted with their pleadings.  Now they want to basically

11  put in a series of terms and conditions that are not supported

12  by the operating agreement and really fall within the

13  parameters of where we're going to go.  Arbitration, whether

14  things are arbitrable, leave it to the arbitrator; mediation,

15  let's try to mediate.  Okay?  Mediation is a voluntary

16  process.  If we don't settle it there, then we reach an

17  impasse, we blow it up and go to court or just try to resolve

18  it on our own.

19         But it doesn't seem like we need all these conditions

20  and terms and all this other stuff that they put in this order

21  that they submitted to the Court yesterday afternoon, and

22  that's really my only objection, your Honor.  And I can show

23  you what I sent to, if your Honor likes, I can approach the

24  bench, they have a copy of it, I can show you what I sent, our

25  consent, our requested changes, our red lines, and I can

```
 1   submit that to the Court and have you take a look at that.
 2           THE COURT:  All right.  Let me see that.
 3           MR. LOMAX:  Okay.
 4           MR. LENTZ:  Judge, we agreed to be helpful to go
 5   through that.  We're not that far off on it.
 6           THE COURT:  Mr. Dahan, what's your view?
 7           MR. DAHAN:  Your Honor, let me just respond to Mr.
 8   Lomax's comments.  It's very important to understand that we
 9   filed this application back on January 29th.  We're now more
10   than two weeks removed.  The reason we are here because of the
11   delay is because of the defendants.
12         We had a hearing set up in State Court.  They requested
13   an adjournment claiming that they did not get copies of the
14   pleadings when I served them every which way except carrier
15   pigeon.  I served them by overnight mail, certified mail,
16   regular mail, Federal Express.  But the State Court had
17   adjourned the hearing at that time.
18         Now, more than two weeks has passed by and we get
19   notice just yesterday on the eve of this hearing that they're
20   willing to consent to what we asked for more than two weeks
21   ago, but the bottom line is they never agreed to it two weeks
22   ago and we're here now asking the Court for relief.  Things
23   have changed, your Honor.  Things do not stay the same since
24   the time when you file an application for injunctive relief,
25   and that's what's happened here, your Honor.
```

 1          At issue, one of the big issues in this case is that

 2     there is -- we're on the verge of entering into an agreement

 3     with a significant international franchise chain and we want

 4     to move forward with that.  We want to provide them with

 5     pricing and we want to move forward with entering into an

 6     agreement with that franchise chain.  So far it's the single

 7     biggest opportunity that has ever been presented to this

 8     company that really is in its infancy.  It just started back

 9     in 2015.

10          THE COURT:  What are the annual sales of the

11     plaintiff?

12          MR. DAHAN:  Your Honor, I don't have that information

13     available.  But this opportunity with this franchise company

14     would be significant because they have a significant number of

15     stores.  I don't want to, for confidentiality purposes, reveal

16     who it is, but it is a significant international food

17     franchise.

18          THE COURT:  Well, what I'm trying to understand is

19     just relative scale.

20          MR. LOMAX:  I can try --

21          THE COURT:  Does this add 10 percent to their

22     revenue, or is this double the size of the company, or --

23          MR. LOMAX:  I can try to help, your Honor.  Okay?

24     First, the company is not a party in the case for I don't know

25     whatever reason, it is not a party.  The members are the

1    combatants in this case.  I don't understand why the company

2    is not a party.

3          Having said that, I believe the annual sales are in the

4    millions now.  It's been represented to us, but we have asked

5    for the documents relating to this, this proposed opportunity

6    with this franchisor, it has been represented to us it could

7    potentially be additional millions.  We have no way to

8    quantify it.  We have asked for documents.

9          And the reason why time passed, my client is a

10   62-year-old retired NFL player.  His name is Al Bubba Baker.

11   He might be in the Hall of Fame.  He came up with a really

12   cool idea and patented it.  It is a way to take rib meat and

13   remove the bones, and that's what they sell.  That's the

14   widget they sell, ribs without the bones.  I think I can say

15   this about where they -- one of their customers?  There's

16   nothing confidential about that, right?

17          MR. DAHAN:  I'd rather not.

18          MR. LOMAX:  Okay.  Right now there's a major

19   franchisor that sells the product.  Okay?  And he came up with

20   this theory, this business idea, went to Shark Tank, after he

21   patented it, went to Shark Tank, and one of the guys on Shark

22   Tank, who is one of the partners represented by Mr. Lentz,

23   thought the idea was great, and hence this partnership,

24   Rastelli is the meat guys.  Right?  That's how we came about

25   this.

1    He lives in Ohio and Florida.  His counsel that was

2  dealing with this and was dealing mostly with transactional

3  counsel, Mr. Dahan's partner, Ben Levin, and they were trying

4  to work it out for basically the better part since this

5  lawsuit was settled and even before -- before it was filed,

6  rather.  And that's kind of how we got to here.

7    They hired me when they couldn't work it out, and I was

8  supposed to be local counsel.  Unfortunately, I became much

9  more than local counsel when I got off a plane at two o'clock

10  Wednesday afternoon to a major storm.  So, that's where we are

11  today.

12    It is in the scope of millions.  On February 13th, my

13  client's Cleveland lawyer sent an e-mail to Mr. Levin asking

14  for all the specifics of it.  My client's Cleveland lawyer has

15  told me that he never got a response to that, getting the

16  proposal, this NDA that supposedly exists, we don't have any

17  of these records.  My client is a 50 percent manager of the

18  company.  As well settled New Jersey law, he is entitled to

19  every shred of documents in there.  He doesn't have them.  And

20  they want him to vote on this.  This is a major issue here.

21    Now, we don't want to lose the opportunity, but we need

22  to know more.  That's why if we get in this arbitration

23  setting or mediation setting, hopefully we can work it out.

24  We tried to work on business terms today.  We got nowhere.

25  Okay?  They've been trying to work on business terms for about

```
 1   two weeks to try to get through this problem.  We got nowhere.
 2   That's why I say, Judge, I don't think it's for this Court
 3   right now to make a decision based on some of this
 4   information, to order things that are going to be ruled upon
 5   by an arbitrator and discussed with a mediator.
 6              MR. DAHAN:  Your Honor, may I respond?
 7              THE COURT:  Yes, sir.
 8              MR. DAHAN:  Okay.
 9              THE COURT:  Mr. Lomax, do you want to hand up the red
10   line?
11              MR. LOMAX:  Yes, this is my response.  It's the same
12   as this.  Do you want to check it out?
13              MR. DAHAN:  No, I accept your representation.
14              MR. LOMAX:  May I approach, your Honor?
15              THE COURT:  Yes.  Thank you, sir.
16              MR. LOMAX:  Yes.
17              THE COURT:  Mr. Dahan.
18              MR. DAHAN:  Your Honor, I can respond point by point
19   to Mr. Lomax's comments, but I would respectfully submit our
20   time would probably be better spent going through what Mr.
21   Lomax just handed to you.  Those were his revisions, your
22   Honor, to the proposed consent order that I filed with the
23   Court yesterday, and, your Honor, if you will bear with me, I
24   can explain why each one of these changes are either not
25   acceptable or are acceptable, and why they're consistent with
```

 1   the operating agreement, if I may, your Honor.

 2           THE COURT:  All right.  Well, let me -- I need to

 3   read it first.

 4           MR. DAHAN:  Sure.

 5           THE COURT:  I read the original, but I need to see

 6   the comments here.  We'll just take it paragraph by paragraph.

 7   Is that okay?

 8           MR. DAHAN:  Yes, your Honor.

 9           THE COURT:  All right.  So, let me read C.  That's

10   the first change, right?

11           MR. DAHAN:  Correct, your Honor.

12           THE COURT:  All right.  Let me just read that and

13   then I'll hear both of you on it.

14       Where, Mr. Dahan, where would I quickly find the

15   operative provision in the agreement regarding arbitration?

16           MR. LOMAX:  I have a copy of the operating agreement

17   I can hand up, your Honor.

18           MR. DAHAN:  It's in 4.1(g), your Honor.

19           THE COURT:  All right.  I have it.  Let me just read

20   that.

21           MR. DAHAN:  And I should say (g) and (h).

22           THE COURT:  Right.  Okay.  So, this describes a, how

23   one reaches a "deadlock," right?

24           MR. DAHAN:  Correct, your Honor.

25           THE COURT:  There needs to be a proposal of a

1  resolution, a vote, and then only after a true deadlock arises

2  out of an inability to pass the resolution does the

3  arbitration provision become operative.  Is that a fair

4  reading of this?

5       MR. LOMAX:  Yes, your Honor.

6       MR. DAHAN:  Correct, your Honor.  Yes, you have to

7  have a particular action or resolution which we have attempted

8  to do, and Mr. Baker has not -- has refused to participate.

9       THE COURT:  Okay.  Just so I don't lose the train of

10  thought here.  So, you would say that the issue of the

11  approval of the pricing information for the new business, I'll

12  call it, whether such an agreement for the new business should

13  be entered into and where the company should source pork

14  products were the subject of a resolution as described in (g)?

15       MR. DAHAN:  Yes, your Honor.  We requested several --

16       THE COURT:  Okay.  Let me stop you there, because I

17  want to ask Mr. Lomax, was the Walmart situation and Meijers

18  account situation the subject of a resolution and vote?

19       MR. LOMAX:  I'm told yes.  I'm told yes from my

20  Cleveland counsel.

21       THE COURT:  Do you believe that's true, Mr. Dahan?

22       MR. LOMAX:  He does not, and I don't believe they

23  jumped through all the hoops for 1, 2 and 3 either.

24       MR. DAHAN:  Your Honor, we did, because we did send

25  notice.  We requested meetings at six times, your Honor.  We

1    sent notices for a meeting on December 18, 2018, December 27,

2    2018, January 10, 2019, and each time Mr. Baker refused to

3    participate and canceled the meeting.  We also --

4            THE COURT:  Well, hold on.  That raises a different

5    thing, right?  You're saying they didn't even agree to

6    consider a resolution or have a vote.

7            MR. DAHAN:  No, your Honor.  We wanted to have these

8    discussions because we wanted to have Mr. Baker approve of the

9    pricing information and talk about any issues he may have with

10   respect to using the pork product.  Now, he claims that he's

11   never agreed to the pork product.  That's not true, your

12   Honor.

13           We sent Mr. Heben, Ohio counsel for the defendants, we

14   sent him an e-mail explaining how his client specifically

15   approved of the use of this -- the sourcing of pork, and we

16   attached to it various e-mails showing that we even gave him

17   the opportunity to go to the facility where the pork comes

18   from to inspect it.  He said, no, I trust the Rastellis'

19   judgment, go with it.  And there were other e-mails explaining

20   how excited him and his family were about getting the pork

21   product and moving forward with it.

22           So, I don't even know, respectfully, your Honor, I

23   don't even know why that's a dispute by the defendants as far

24   as using this product.  History will show, and that's an issue

25   for another day, I understand that, but history will show that

1   he clearly approved of it in writing not once, but several

2   times.  But that can be an issue that can be resolved at

3   arbitration.

4        What we're trying to do here, your Honor, is we're

5   saying, look, the operating agreement clearly says what a

6   deadlock is.  We have a classic situation of a deadlock here.

7   We have tried to schedule meetings and asked Mr. Baker to

8   approve of the pricing information.  He refuses to

9   participate.  We have sent notices of meetings to Mr. Baker to

10  help come together and discuss and develop and approve of an

11  operating budget, which that's a member issue, which is in a

12  different section, your Honor, Section 4.4 of the operating

13  agreement.

14       THE COURT:  I'm sorry.  I read this more carefully

15  now.  There doesn't have to be a resolution.  Fairly read, it

16  says if the managers cannot agree on a particular action after

17  requests for unanimous written consent, and you're telling me

18  that those requests were made.

19       MR. DAHAN:  Correct, your Honor.

20       THE COURT:  All right.  Maybe I misunderstood Mr.

21  Lomax.  I thought the Walmart and the Meijers account

22  situation were things that he wanted to add to the

23  arbitration.

24       MR. LOMAX:  Correct, your Honor.

25       MR. DAHAN:  Yes, your Honor, and if I can respond to

```
 1   that.

 2          THE COURT:  Okay.

 3          MR. DAHAN:  And I'll tell you why -- well, a couple

 4   things.  Let me just respond.  I'm just trying to go in the

 5   order, your Honor.  We put in there binding arbitration.

 6   Clearly Section 4.1(g) refers to arbitration.  I don't know

 7   how arbitration is anything but binding.  So, why they would

 8   not agree to that to me I don't understand.

 9          MR. LOMAX:  Can I just say, your Honor?

10          THE COURT:  Hold on.  Let him finish.

11          MR. LOMAX:  Okay.

12          THE COURT:  I've got more questions for him anyway.

13          MR. DAHAN:  Now, with respect to the Walmart account

14   situation and the Meijers account situation, your Honor, we

15   need to remember the procedural, I ask the defendants to

16   remember the procedural posture of this case.  We initiated

17   this lawsuit.  We claimed that we needed immediate injunctive

18   relief for the reasons set forth in the verified complaint.

19   They haven't asked for anything in this lawsuit.  There is

20   nothing pending before this Court establishing that the

21   Walmart account situation and the Meijers account situation,

22   whatever that means --

23          THE COURT:  I realize that, Mr. Dahan, but we're

24   talking about a consent order here.  Is there any reason why,

25   if the proper -- if the procedural requirements of (h), (g)
```

1    had been followed, why your client would not agree to

2    incorporate within the arbitration those areas of dispute?

3              MR. DAHAN:  What we talked to Mr. Lomax about this

4    morning, your Honor, before we came here was that we would be

5    agreeable to the defendants reserving their right to seek any

6    arbitration or mediation in connection with any issues that

7    fall within those particular clauses in the operating

8    agreement.

9              THE COURT:  That's a different question.  Certainly

10   they could have -- if you were in an arbitration, you could

11   ask the arbitrator to incorporate it, but my question is

12   different.  As a matter of good faith in a consent order, if

13   the procedural requirements of 4(g) had been followed, a

14   provision you are relying on, your client is relying on to tee

15   up for the arbitrator certain issues, why would you not agree

16   in a consent order to have those other issues resolved as

17   well?

18             MR. DAHAN:  Your Honor, because we're not aware of

19   any deadlock with respect to either Walmart or Meijers.  I

20   think what the defendants are seeking is they want more

21   information with respect to those two accounts.  We will agree

22   to go to mediation on those.

23             THE COURT:  I premised my question with, if the

24   procedural requirements of 4(g) had been that, that is, the

25   managers cannot agree on a particular action and, after a

1    request for unanimous written consent had been sent, let's say

2    Mr. Lomax can show you that his client said to your client, I

3    want action on these two issues and would like your unanimous

4    written consent and that was refused, why you wouldn't include

5    that in the arbitration.

6            MR. DAHAN:  Your Honor, because we don't know if it's

7    a deadlock.  If it's a deadlock --

8            THE COURT:  I would suggest to you that is by

9    definition, for the same reason you argue the other issues are

10   a deadlock.  You asked him to concede.  He refuses to

11   participate.  There's been no vote, right?

12           MR. DAHAN:  There's been no vote because he won't

13   vote on it.

14           THE COURT:  Right.  And that's why I think this was

15   written probably the way it was, which is if the managers

16   cannot agree on a particular action after, and there's "ors"

17   in here, after requests for unanimous written consent, you go

18   to arbitration.  In other words, you can't defeat the purposes

19   of arbitration by refusing to play nice and go along.

20           MR. DAHAN:  I agree, your Honor.

21           THE COURT:  So, this is drafted in a way to not

22   require a formal vote or resolution.  It carves out someone

23   who is refusing to participate.  Right?

24           MR. DAHAN:  Right.

25           THE COURT:  And you're saying to me there was no

1    vote, right?

2        MR. DAHAN:  On the issues we have identified, your

3    Honor, correct.

4        THE COURT:  Right.  And Mr. Lomax is telling me that

5    a similar situation arises for those other two issues.  There

6    was a request for unanimous consent.  No information --

7        MR. LOMAX:  Can I just tell you what we did, your

8    Honor, with the two things?

9        THE COURT:  Well, hold on.  Let me just see if he --

10   if the procedural posture is the same, whatever the issue may

11   be, and 4(g) applies, wouldn't it make sense for both sides,

12   if they're going to go to the arbitrator to resolve any

13   outstanding issues in which they appear to have a

14   disagreement, so long as the procedural requirements of 4(g)

15   have been met?

16       MR. DAHAN:  Well, your Honor, I would answer it this

17   way.  I don't understand what the Walmart account situation

18   and the Meijers account situation is.  The only thing I know

19   about that is the defendants are seeking additional

20   information in connection with those two accounts.  That's,

21   that's not a deadlock to me, your Honor.  That's a request for

22   information that we can try to resolve in mediation.  And that

23   would fall under the appropriate mediation clause in the

24   operating agreement.  I don't see a deadlock.

25       To answer your Honor's question, yes, if you go through

1  the required steps in 4.1(g) and assuming it's a deadlock and

2  not a request for information because, your Honor, I don't

3  understand the request for information to create a deadlock.

4          THE COURT:  Okay.  Fair enough.

5          MR. DAHAN:  And, your Honor, the other thing I want

6  to address is, in this section, they -- we put in here a

7  clause that says that the arbitration, and the mediation, will

8  require the parties and their counsel to participate in

9  person.  They want to change it to say that the parties and

10 their counsel can participate either in person or by

11 videoconferencing, Skype or telephone.

12         Now, your Honor, in my experience, in order for an

13 arbitration to be productive and a mediation to have any

14 chance of success, it is imperative that the parties and their

15 counsel be present in the room in the same building and be

16 vested in the process because, as your Honor knows, there's

17 caucusing and there's a lot of back and forth, and by having

18 somebody participate by Skype or videoconference is not the

19 same thing, your Honor, and it would be extremely difficult

20 for an arbitration to be productive or for a mediation to be

21 successful.  We could have technical difficulties, but more

22 importantly, it's important to have the person there, the live

23 body.

24         THE COURT:  Does the agreement address how the

25 arbitration should proceed procedurally, where and how

1   conducted?  It's not in 4.1(g).

2           MR. DAHAN:  No, your Honor, and that's why we

3   requested that some of these details be included in the

4   consent order, because we're worried that on the fringe of

5   losing this significant and rare opportunity with this

6   franchise system, your Honor, that we are going to waste time

7   having disputes over, well, how do we select the arbitrator or

8   the mediator, when does it have to be completed by, and that

9   was the purpose of including what we included in the consent

10  order.

11          And, your Honor, clearly the intent of Section 4.1(g)

12  is that any deadlock would be promptly resolved.  It says that

13  after -- if the managers cannot agree on a particular action

14  or resolution after a vote on the resolution has been taken

15  during two separate meetings of the managers or requests for

16  unanimous written consent, which meetings or requests had been

17  duly called and held pursuant to this agreement, such

18  disagreement is hereinafter referred to as a deadlock, then

19  the managers shall select an individual who is not an officer,

20  member or manager of the company to serve as a neutral

21  arbitrator to resolve the deadlock within five business days

22  after the second meeting of the managers.

23          Then it goes on to state, if the managers can't agree

24  on an independent single arbitrator, then each side will pick

25  one, so there will be two arbitrators, and they will pick a

1    third.  But here's the interesting thing, your Honor.

2    Clearly, the operating agreement recognizes that there are

3    going to be time sensitive deadlock issues that have to be

4    resolved as quickly as possible, because in that same

5    paragraph, it goes on to state, the neutral arbitrator, last

6    sentence, the neutral arbitrator shall vote for or against the

7    resolution at the next duly called and convened meeting of the

8    managers.

9          Now, if we look at Section 4.2(a), your Honor, that

10   governs the meetings of the managers, and a manager can duly

11   call a meeting of the managers upon a mere two days notice.

12   So, even if you take the five days to select an arbitrator in

13   Section 4.1(g) and you take the two days in Section 4.1(a) to

14   call a meeting, you're talking about no more than seven days

15   to have a decision by an arbitrator to resolve the deadlock

16   issues.

17         So, clearly the operating agreement, which was signed

18   by the defendants and which they are so heavily relying upon

19   to say we're only going to stick to the four corners of the

20   operating agreement, supports our argument, because the intent

21   was clearly to resolve deadlock issues as quickly as possible.

22         Now, had they agreed to do that back on January 29th or

23   30th when we initially, we filed the application on January

24   29th, then the arbitration would have been completed by now,

25   your Honor.  But here we are more than two weeks later, they

1   haven't complied with those provisions of the operating

2   agreement, and now they don't want to agree to go to

3   arbitration right away.

4       Now we have a situation where this major international

5   franchise wants to begin an operations test by February 28th.

6   They have made it clear to us that they will not move forward

7   unless there's a written agreement in place and that written

8   agreement sets forth the timeline and strict milestones as far

9   as when things have to proceed.

10          THE COURT:  I read the new certification, Mr. Dahan.

11  I appreciate that.

12          All right.  So, why would I not, let's say that you

13  can't agree on the terms of the consent order, why would I not

14  enter an injunction directing the manager of the companies --

15  the managers of the company to immediately submit to

16  arbitration to resolve any deadlock issues described in -- as

17  defined by Section 4.1(g) and (h), the scope of such

18  arbitration to be determined by the arbitrator, that is, the

19  arbitrator to determine whether something is in fact

20  deadlocked under the terms of the agreement?

21          MR. DAHAN:  Because, your Honor, we have already

22  established that there is a deadlock as to those issues we

23  have identified, and we think it's important to identify the

24  scope of what the arbitrator, specifically what the arbitrator

25  is being asked to rule on, which we have identified as part of

 1   our application.  There's no formal application before the

 2   Court as far as what the defendants may want to submit to

 3   arbitration.  I don't understand what else they would want to

 4   submit to arbitration other than what we have identified

 5   because there's no other deadlock.

 6           THE COURT:  Well, as you said, they can make that

 7   application to the arbitrator.  Normally when I send something

 8   to arbitration, the scope of the arbitration is determined by

 9   the arbitrator.  That's generally federal law, correct?

10           MR. DAHAN:  Yes, your Honor.

11           THE COURT:  I can make a preliminary finding that the

12   parties appear to be deadlocked on one or more issues as

13   defined by the agreement, and in light of the strong federal

14   interest in the arbitration of disputes, the Federal

15   Arbitration Act, so forth and so on, directing the parties to

16   conduct mediation -- arbitration, rather, under 4.1(g) and (h)

17   on any issue the arbitrator deems to be deadlocked within the

18   meaning of those provisions, and simply leave it to the

19   third-party arbitrator to decide what is or is not deadlocked.

20           MR. LENTZ:  May I be heard on that briefly?

21           THE COURT:  Let me finish with Mr. Dahan and then

22   I'll be happy to hear you.

23           MR. DAHAN:  Your Honor, if I may make a suggestion.

24   We don't know if there's a deadlock with respect to Walmart

25   and Meijers.

1          THE COURT:  I know, that's part of my reluctance.

2          MR. DAHAN:  Yes, and that's why I would say let that

3    go to mediation because it may be a situation where it can be

4    worked out.  If it's just a situation where they are

5    requesting information, you know, that should be addressed in

6    mediation and not arbitration.

7          THE COURT:  To be clear, I would order both, and I

8    have a separate theory about mediation here, but I don't know

9    that the two things can't work hand in glove as you suggest.

10   If the parties resolve it through mediation, there's no --

11   it's no longer deadlocked and they would simply withdraw it

12   from the arbitrator's determination.  If mediation is

13   unsuccessful and one party or another can demonstrate to the

14   arbitrator that an issue is deadlocked within the terms of the

15   agreement, it seems to me that the arbitrator could hear such

16   a matter.

17         MR. DAHAN:  Right.  I think there's a timing issue,

18   your Honor, if I may address that.

19         THE COURT:  All right.  Well, let me say I would

20   direct such arbitration in light of the procedural delays here

21   to be conducted within a designated time frame.

22         MR. DAHAN:  Yes.  And, your Honor, to me I kind of

23   almost see it as two different buckets, and what I mean by

24   that is this.  We have this extremely urgent situation with

25   this international franchise.  My client has advised me that

```
 1   if we don't have an agreement in place by Friday, one week

 2   from today --

 3            THE COURT:  I understand.  I read the certification.

 4   I hear you.  I'm with you.

 5            MR. DAHAN:  Okay.

 6            THE COURT:  Timing, that's kind of like, I know it's

 7   important, but it's a little bit of a -- right now it's still

 8   the tail of the dog because I have to figure out what I'm

 9   going to order, but I understand, I understand the urgency of

10   the issue.

11            MR. DAHAN:  And, your Honor, we have, there is an

12   arbitrator, there is an attorney who is available to handle

13   this next week, any arbitration that we -- that your Honor may

14   order in accordance with our application.

15            MR. LOMAX:  The first I'm hearing about this, your

16   Honor.  No arbitrator has been proposed to us, your Honor.

17            MR. DAHAN:  That's true.  What I'm saying is you had

18   expressed, defense counsel had expressed a concern that we

19   wouldn't find anybody to handle this by next week.  There is

20   somebody we can propose whose calendar is available next week

21   to timely address this.

22            THE COURT:  All right.  Very good.

23         Mr. Lentz, do you want to be heard?

24            MR. LENTZ:  Yes, just briefly, your Honor.  And I

25   appreciate your -- I can see you struggling to try and be fair
```

1    to both sides, which I appreciate.  My concern on this, your

2    Honor, is the issue of Walmart and Meijers, which was new to

3    me today when it came in, is that there's no emergency with

4    respect to those two issues.  I agree they have a right to

5    mediate those and arbitrate those, but my concern is if you

6    rule the way you're going to rule with how at loggerheads

7    every call I have been on with Mr. Baker and his Ohio counsel,

8    that we're going to slow down and delay the ability to

9    arbitrate what is an emergency, which is this franchise deal,

10   which my client will be severely hurt, the amount of time that

11   they have put in.

12        If you're going to do that, why can't it be that they

13   will arbitrate the issue of the international franchise

14   pricing agreement, it's simple, all we have to do is agree on

15   a price, and we're really not disputing the price, we're

16   disputing at the end of the day what his client's ultimate

17   piece of that is which, frankly, shouldn't be part of this

18   hearing, but why can't you say with respect to Walmart and

19   Meijers, they have the right to proceed to arbitration and

20   mediation, we're not opposing that, but with respect to the

21   international franchise issue, that shall be decided first.

22   There's no time deadline for the other two.  There's no

23   emergency.  That's my only request.  I don't want one to slow

24   the other down.

25        THE COURT:  Okay.  And I think Mr. Dahan was trying

1    to say that to me, and I understand.  Mr. Lentz, explain to me

2    again, and I apologize because I did grant your motion, DF

3    Ventures International.

4           MR. LENTZ:  They are a 20 percent equity owner in the

5    entity that would receive the money.  We're the Shark Tank

6    people they referenced.

7           THE COURT:  All right.

8           MR. LENTZ:  And one other point, Judge, we also did

9    send a written request January 10th to Mr. Baker to resolve

10   this issue over the pricing.  He didn't show up, nor did he

11   show up at the monthly sales calls and so forth.

12          THE COURT:  All right.  Mr. Lomax.

13          MR. LOMAX:  Yes, your Honor.

14          THE COURT:  So, do you dispute as a factual matter

15   that the three issues identified in Mr. Dahan's proposed order

16   are not deadlocked as defined by 4.1(g) and (h)?

17          MR. LOMAX:  I'm going to say yes, but I'm going to

18   say we don't care if it goes to arbitration.  Okay?

19          THE COURT:  Okay.

20          MR. LOMAX:  And I'll tell you why we dispute it.  On

21   February 15th, I have an e-mail here from Mr. Heben, who is

22   Cleveland counsel for Mr. Baker, and it's to his partner, Mr.

23   Levin, and Gavin is copied, where there is a laundry list of

24   information requested about this potential opportunity for the

25   company.  This is February 15th.  I'm being told, and I

1  believe him, that this has not been responded to, and the

2  information requested has never been provided.  So, I

3  believe --

4          THE COURT:  Let me see it.

5          MR. LOMAX:  Well, I don't -- this can't be part of

6  the record because of the confidentiality, it references the

7  name of the --

8          THE COURT:  Let me see it anyway.  I'm not going to

9  make it part of the record.

10          MR. LOMAX:  Any objection?

11          THE COURT:  Mr. Dahan is going to tell me that if you

12  want to delay something, you ask for a whole bunch of

13  information.  If he showed up, if your client showed up for

14  the meetings that were requested and asked for this, I

15  assume --

16          MR. LOMAX:  It's a month to the day, though.

17          THE COURT:  -- I don't have any reason to doubt that

18  there wouldn't have been a good faith discussion.  What we

19  have here is, apparently, requests for a meeting, this is an

20  important issue, we need to sit down and talk about it, radio

21  silence, crickets.  Then there's a requirement to go to the

22  State Court.  Then there's this -- frankly, I'm not happy when

23  I see these removals on the eve of a preliminary injunction

24  hearing in the State Court.  It just looks bad.  It looks like

25  your client is doing everything they can to frustrate the

```
 1   relief sought and to delay an adjudication.  It's not helpful.
 2            MR. LOMAX:  I understand, your Honor, but we acceded
 3   to the relief sought.
 4            THE COURT:  That's not what I'm hearing.
 5            MR. LOMAX:  No, we did.
 6            THE COURT:  I'm hearing that you dispute whether or
 7   not --
 8            MR. LOMAX:  I have the order, and the order says, the
 9   proposed form of order, A and B is the same as what it says in
10   the other order, but it's compelling defendants to immediately
11   participate in mediation in accordance with Article 12 of the
12   operating agreement, to address, among other things, approval
13   of the 2019 operating budget, and D is to go to arbitration to
14   address, among other things, the approval of the same three
15   items that they list.
16            THE COURT:  All right.  What about timing?
17            MR. LOMAX:  Timing, we'll exchange three names of
18   arbitrators today, tomorrow, whatever, and we'll see who is
19   available as quickly as possible.  But they want to put a
20   deadline that we've got to arbitrate by the 20th and we
21   haven't picked an arbitrator yet, and getting somebody to be
22   available by the 20th is a monumental task.  The good -- I
23   won't say good -- there's a lot of good arbitrators out there,
24   but they're in demand and they take a while to get on a
25   calendar.
```

1          Now, I'm hopeful, once we're done this process here,

2     that cooler heads will prevail, the business people will sit

3     down and get this done without arbitration, we'll get this

4     international franchise thing done.  Heben, Mr. Heben, Mr.

5     Baker, their respective, Mr. Levin, who is corporate counsel

6     for the Rastellis, Gavin, Mr. Rastelli, these people all have

7     been involved in days upon days, hours upon hours of

8     negotiations to try to get through this morass, but we have

9     this parallel track of being here.  Okay?

10          These parties should make a deal.  They're partners.

11     My client is the biggest partner.  And part of the reason

12     there's distrust here, there was a multimillion dollar deal

13     with another franchisor, and my client has gotten peanuts on

14     that deal, peanuts.  Now, someone claimed 63,000, my client

15     says 3,000.  Okay?  I don't know what the difference is.  I'm

16     working on two different assumptions.  But not a lot of money

17     on multimillion dollar sales.  Okay?  And he's a 45 percent

18     owner.  So, that's why we're in the morass we are.

19          They have asked for information.  This guy is, I think

20     Mr. Heben, he's working on this on a basis that I wouldn't

21     work on it.  This guy doesn't have a lot of money, Mr. Baker.

22     He has an idea.  He's in with Shark Tank people, and now we

23     have to make sure the I's are dotted and the T's are crossed.

24     Okay?  And that's all we're asking for.  We want information

25     about this deal to make sure it's not another deal like the

1    last one where he gets nothing.

2             THE COURT:  All right.  Mr. Dahan, what's the date

3    that arbitrator is available?

4             MR. DAHAN:  He's available Wednesday all day,

5    Thursday up until 3:00 p.m.  It's Lewis Pepperman from Stark &

6    Stark, your Honor.  My recollection is he's a former managing

7    partner there.  He's a business litigator.  He's very well

8    respected in the legal community.  And that would be our

9    suggested arbitrator.

10            MR. LOMAX:  Judge, I have a very contentious

11   litigation with Stark & Stark in a shareholder case right now.

12   I know who Mr. Pepperman is.  It's not who I would select.

13   Let's get three different people that --

14            THE COURT:  Well, the agreement has a mechanism when

15   you can't agree.

16            MR. LOMAX:  Yes.

17            THE COURT:  You choose one each.

18            MR. LOMAX:  Right.  I can submit somebody to your

19   Honor, too, and your Honor could I think -- is it left to the

20   Court?  I don't remember.

21            THE COURT:  No.  It says that, I think it says that

22   each, if you can't agree on one, that each selects one, and

23   those two arbitrators pick a third person.

24            MR. LOMAX:  Okay.  We're trying to avoid that.  I

25   mean, if we can find three retired judges that are well known,

```
 1    that are in the business of ADR, I mean, that's who I kind of

 2    want.

 3            MR. DAHAN:  It's a single arbitrator.

 4            MR. LENTZ:  Single arbitrator.

 5            MR. LOMAX:  I understand that.  I'm fine with a

 6    single arbitrator, but what I'm saying is -- may I address

 7    counsel?

 8            THE COURT:  Yes.

 9            MR. LOMAX:  I'm fine with a single arbitrator, but

10    let's get three guys who are in the ADR business because I

11    just want to make sure that this guy is treated fairly.

12            THE COURT:  He means two, pick one, not three.

13            MR. LOMAX:  Yes, two, pick one, but let's get three

14    people in the ADR business because they're not going to screw

15    anybody.

16            THE COURT:  All right.  Mr. Lomax, do you have any

17    problem with that arbitration concluding no later than five

18    o'clock on February 21st?

19            MR. LOMAX:  Well, assuming we can get somebody, no.

20    As soon as it can get done, I have no problem with that.

21            THE COURT:  Well, I would order it.

22            MR. LOMAX:  Okay.

23            THE COURT:  Here's the concern.  Again, with the

24    procedural history, what I believe is fairly substantial

25    evidence of attempts to get this issue discussed, and the
```

1   certification that's been given to me that this business

2   opportunity may very well be lost by the 22nd, it seems to me

3   that delaying arbitration is simply defeating the essential

4   purpose of those provisions in this agreement which were

5   clearly for the benefit of both sides and have to be addressed

6   in good faith by both sides.

7           MR. LOMAX:  Agreed.

8           THE COURT:  So, I would be inclined to do the

9   following:  I'd ask you to consent to it and I'll hear

10  argument before I actually enter it without agreement.  But I

11  don't think we need the word "binding."  That seems to me to

12  be inherent in the nature of arbitration.  How binding it will

13  be will be dependent upon the law and the agreement the

14  parties entered into.  I don't need the word, to add the word

15  "binding."  I don't need the word "expedited" because I'm

16  going to set a timeline for it.

17         So, I would say, I would direct that the managers of

18  the company shall immediately submit to arbitration the

19  deadlock issues described below in accordance with Section

20  4.1(g) and (h) of the operating agreement for the company.

21  The deadlock issues include, and it would be those three

22  things.

23          MR. LOMAX:  Can I be heard on 4 and 5, your Honor?

24          THE COURT:  Well, let me finish and then I'm going to

25  tell you how I intend to address that.

1          MR. LOMAX:  Okay.

2          THE COURT:  The arbitration shall take place in New

3     Jersey -- well, I would strike that.  Expenses for attendance

4     by each party shall be at each party's sole cost and expense.

5     And then the arbitrator shall be selected in accordance with

6     4.1(g) of the operating agreement for the company by Monday,

7     February 19th, and the arbitration shall take place and

8     conclude no later than February 21st, 2019.

9          I would then say that nothing in this order precludes

10    any party from seeking the arbitration of any other issues

11    deadlocked within the meaning of 4.1(g) and (h), such

12    determination as to the scope of arbitration to be determined

13    by the arbitrator; and second, the time, place and manner of

14    the arbitration shall be determined by the arbitrator.  That's

15    what I would do.  I'd ask you to consent to it.

16         Mr. Lentz.

17         MR. LENTZ:  The only thing we may not be thinking

18    about is, that's all fine, but you said any party can add any

19    other issue.  It doesn't seem to be fair to either side that

20    we really want to have to decide the Walmart issue and the

21    other issues by 2/21/19.  Those, anything other than the

22    pricing issue can be decided later.

23         THE COURT:  Well, I would add in --

24         MR. LENTZ:  At their discretion.

25         THE COURT:  That's a good point.  I would say nothing

```
 1   in this order precludes the arbitrator from resolving any

 2   other issue within its jurisdiction as defined by the

 3   agreement in any time frame determined appropriate by the

 4   arbitrator.  If the arbitrator says I'm not dealing with that

 5   now, it's not ripe, it's unnecessary, then that's for the

 6   arbitrator to do.  If the arbitrator can get it done, wants to

 7   get it done, thinks it's deadlocked and thinks it's timely,

 8   then the arbitrator can do it.

 9          MR. LENTZ:  But the franchising issue will be by the

10   21st, you're saying.

11          THE COURT:  Yes.

12          MR. LOMAX:  Judge, can I just be heard on one issue?

13   I just want to talk about videoconferencing.  Okay?

14          THE COURT:  Go ahead.

15          MR. LOMAX:  Mr. Baker, we discussed this today, Mr.

16   Baker has an -- had an aortic aneurysm and he shouldn't fly.

17   That's one of the problems.  Plus, getting a flight from

18   Cleveland to here or Florida, wherever he is, to here --

19          THE COURT:  I'm not ordering him to appear in person.

20          MR. LOMAX:  Okay.

21          THE COURT:  I wouldn't do that.  I leave it to the

22   arbitrator.  I assume that your adversaries would listen to

23   reasonable requests for accommodations for someone who might

24   have those difficulties.

25          MR. LOMAX:  He didn't today.
```

```
 1              THE COURT:  And I also assume that the arbitrator
 2      would be similarly sensitive to that.  And it would be a shame
 3      if they determined that there was a refusal to arbitrate when
 4      someone was physically unable to get there.  But I'm not --
 5      there's nothing in this agreement that I see that mandates a
 6      particular procedure for arbitration and it seems to me that
 7      should be left to the arbitrator.
 8              MR. LOMAX:  Okay.  Thank you.
 9              THE COURT:  Unless there's some provision in federal
10      law that directs me to control that.  I'm trying to, first of
11      all, I'm trying to get you to agree, to consent to this.  If
12      you don't, then I think the scope of my injunction should be
13      limited to the agreement that the parties have reached, and if
14      they have been silent on the issue of the time, manner and
15      method of arbitration, that you will have to be left to --
16      that should be left then to the arbitrator to determine.
17              MR. DAHAN:  Your Honor, may I just respond?
18              THE COURT:  But I would hope that people would, you
19      know, if someone can only be there by phone or
20      videoconferencing because of some health issue, that they
21      would act in good faith to do what could be done to get it
22      done.
23              MR. DAHAN:  Your Honor, if I may respond to what Mr.
24      Lomax said.  I don't recall Mr. Lomax -- this is the first
25      time I recall Mr. Lomax telling me that Mr. Baker had some
```

 1    sort of medical issue.  All we got --

 2         MR. LOMAX:  We left that out today.  There was a lot

 3    of yelling, screaming, so we left that out.

 4         MR. DAHAN:  So, obviously, your Honor, I'm

 5    sympathetic to medical issues.  My son is a type I diabetic.

 6    I get it.  I understand that.  But this is the first time I'm

 7    hearing it from Mr. Lomax.

 8         MR. LOMAX:  Okay.  I apologize.

 9         MR. DAHAN:  Your Honor, the other issue is, I don't

10    want, I just don't want to let this go unanswered, I want to

11    address this.  It's really an issue for another day to be

12    decided by the arbitration.  The key here is, of critical

13    importance is to go to arbitration on these three issues that

14    we identified, but Mr. Lomax gave your Honor an e-mail from

15    Mr. Heben on February 15, 2019, requesting a bunch of

16    information, and this is a two-page e-mail.  It's very

17    important to understand the history here.

18         The defendants were previously represented by another

19    attorney, John Patrick, who requested information from us, and

20    we provided him with voluminous information.  My clients also

21    offered to give training to Mr. Baker and his daughter to

22    access their computer system so that they can get information

23    on inventory and other financial information about the

24    company.  They refused to take advantage of that opportunity

25    to be trained, your Honor, and the old adage is, look, we can

1   lead a horse to water, but we can't make him drink.

2          THE COURT:  I think I said that I'm trying to get Mr.

3   Lomax to agree to what you want, and if he doesn't do it, I'm

4   considering ordering it anyway, so I don't know why --

5          MR. LOMAX:  Just order it anyway, Judge.  I hear what

6   you're saying.  It will be easier for me if you just order it.

7          THE COURT:  So, I'm not questioning, Mr. Dahan, the

8   good faith of your client in attempting to provide

9   information.  In fact, I'm predicating any order I enter on

10  the timing of this suggesting to the Court or informing the

11  Court that some -- and there may be good reasons for concern

12  about this being equitable to both sides, but the parties

13  entered into an agreement in which they agreed to arbitrate

14  these kinds of disputes, and, frankly, it's just not the place

15  of this Court to get down into the weeds about who is right

16  about $63,000 or $3,000 when the parties have carefully

17  thought about how to resolve their disputes.  I will enforce

18  that agreement because it's consistent with federal law to

19  encourage arbitration, the parties have clearly entered into

20  it.

21         I have a separate foundation for mediation, which is

22  our own local rules, which authorizes me to refer any civil

23  action to mediation without the consent of the parties.  So, I

24  don't even have to get into the agreement to order mediation

25  of any remaining issues that should be resolved by February

1   21st, including an operating budget, and it would be by a

2   single mediator.

3        So, Mr. Lomax, you will not agree to the arbitration

4   that I have described?

5        MR. LOMAX:  Well, just so I'm clear on the -- I wrote

6   as quickly as I could, your Honor, but nothing herein shall

7   preclude the parties or -- preclude or limit the issues for

8   arbitration, and it will be subject to what the arbitrator

9   decides is arbitrable; is that correct?

10        THE COURT:  Right.  And including the right to

11   determine a timeline for any arbitration.

12        MR. LOMAX:  Yes.  Your Honor, I consent to this, I

13   consent to this.

14        MR. DAHAN:  Other than the three issues that we have

15   identified that have to go to mediation next week, correct,

16   your Honor?

17        THE COURT:  Right.

18        MR. DAHAN:  Because we don't want any other issues

19   other than those three issues we have identified that --

20        THE COURT:  The arbitrator can take up other issues

21   within that -- by the 21st if the arbitrator determines that

22   they are deadlocked and appropriate for resolution.

23        MR. LOMAX:  That's how I understood it, your Honor.

24        MR. DAHAN:  Hold on.  But, your Honor, the concern I

25   have with that is your Honor had indicated as long as Mr.

1    Baker complies with the requirements in 4.1(g).  He can't

2    possibly do that by February 21st.  We have done that.

3              THE COURT:  Federal law is clear, generally speaking,

4    the scope of arbitration is for the arbitrator, not this

5    Court.  I am not going to get down into the weeds on what the

6    arbitrator can or cannot do.  As a matter of equity, as a

7    matter of injunction or by consent, and I appreciate Mr.

8    Lomax's willingness to enter into a consent, I would

9    specifically send those three issues to the arbitrator.  I

10   don't have any reason to doubt that they are deadlocked.  I am

11   not going to determine other issues as to whether they are or

12   are not deadlocked.  I'm just not going to do it.  And I don't

13   think I should.  And I don't think the law encourages me to do

14   it.

15             But the law is clear, the arbitrator can determine the

16   scope of the arbitrator's jurisdiction on other issues.  And

17   whether or not the issue is actually deadlocked under the

18   terms of the agreement would be within the scope of the

19   arbitrator's authority.  You can make any argument you want to

20   the arbitrator that it's just -- it's not a good idea to do it

21   now because it is going to detract us from the important issue

22   at hand that has to be decided by whatever date it is, and

23   they haven't shown that it's deadlocked, the arbitration

24   provision isn't triggered, make all the arguments you want,

25   and that arbitrator can determine whether or not they want to

1    do it.

2          MR. DAHAN:  Okay.  And, your Honor, just so I'm

3    clear, but the three issues we identified will be decided by

4    an arbitrator next week.

5          THE COURT:  Yes.

6          MR. DAHAN:  Okay.  By the 21st.

7          THE COURT:  Mr. Lomax has agreed to that, would agree

8    to that, so long as he has the option of bringing to the

9    arbitrator's attention other issues and can make the same

10   arguments about whether or not that arbitrator should take

11   those matters up.  If the arbitrator wants to or feels that

12   they can within the scope of the agreement the parties entered

13   into, then that's fully within the scope of the arbitrator's

14   power, but they must decide the issues by the 21st for the

15   ones I have sent because I am convinced on the record before

16   me that they are indeed deadlocked, that there's an equitable

17   interest in seeing that they be resolved by that date given

18   the importance of it to the company.

19         And then whether it's done by phone or in person and

20   where the particular parties are, you may agree on an

21   arbitrator who doesn't want to come to New Jersey.  But the

22   time, manner and method for arbitration shall be determined by

23   the arbitrator since the parties have not entered into an

24   agreement as to that that I can find.

25         MR. DAHAN:  Your Honor, my recollection is Mr. Lomax

1   has no problem with the arbitration taking place in New

2   Jersey.  I mean, that's where, you know, we're located.  The

3   business is located here.  I don't want to get into a dispute

4   as far as where we're going to conduct this arbitration

5   because it is just going to slow the train down.

6           THE COURT:  Well, he's saying his client, his client,

7   who I'm sure wants to attend --

8           MR. LOMAX:  We can do it at the Camden Speed Line

9   station, I don't care.  We can do it anywhere.

10          MR. DAHAN:  Okay.  And then, your Honor, with respect

11  to mediation, did I understand your Honor correctly, because

12  again, we wanted to -- we wanted to have mediation proceed as

13  quickly as possible within a certain time period.  If the

14  parties are willing to work it out, great.  If they consent to

15  extend the 30-day time period to mediate, great.  But if not,

16  then we can come back to court and litigate.

17          THE COURT:  I'm going to direct the parties to

18  mediation, expedited mediation on the issue of developing and

19  approving a 2019 operating budget in accordance with Section

20  4.4 of the operating agreement and any -- well, any and all

21  remaining issues between them just seems too broad.  You'll

22  have to define what issues you want sent to mediation.

23          MR. DAHAN:  Okay.  So, just -- okay.

24          THE COURT:  And what's the time frame for the

25  mediation?

```
 1          MR. DAHAN:  We requested 30 days, your Honor.

 2          THE COURT:  All right.

 3          MR. DAHAN:  And the parties have agreed that we'll

 4  just use a single mediator.  The operating agreement calls for

 5  three, but we all agree that's a waste of expense.  So, we're

 6  all comfortable, and Mr. Lomax can correct me if I'm wrong,

 7  but we're comfortable using a single mediator.

 8          MR. LOMAX:  That's correct, your Honor.  We're

 9  comfortable with Judge Schneider if he's available, your

10  Honor.  I am.

11          THE COURT:  I'll have to take that up with Judge

12  Schneider.  He's very good, but he's so good that I keep him

13  and the other judges here keep him very busy.  You'll have to

14  take that up with him, but I certainly have no objection to

15  that.  But what I would do is I would send the parties to

16  immediately participate in expedited mediation regarding the

17  2019 operating budget because it seems to me to be of

18  importance and interrelated to the issues to be sent to

19  arbitration, such mediation to continue for 30 days as

20  necessary before a single mediator.  I would strike all, any

21  and all remaining issues simply because it's too vague.

22          So, to be clear, I would, in C, I would say the

23  managers of the company shall immediately submit to

24  arbitration the deadlock issues described below, and then it

25  would be the three that were identified in the proposed form
```

 1     of order.  The time, place and manner of arbitration shall

 2     take -- shall be decided by the parties, and if a dispute

 3     arises, by the arbitrator.  The arbitration shall take

 4     place -- shall conclude no later than February 21st, 2019.

 5          Nothing in this order precludes either party from

 6     seeking arbitration of any other deadlock issues as defined in

 7     4.1(g) and (h), such a finding of deadlock under those

 8     provisions to be determined by the arbitrator.  Expenses for

 9     attendance by each party shall be made at each party's sole

10     cost and expense.

11          MR. LOMAX:  Judge, are you writing these in, or do

12     you need a --

13          THE COURT:  I would really appreciate if someone

14     could submit something to me.  Do you have the ability to do

15     that?

16          MR. LOMAX:  I can try.  I will go back to my office

17     and try.

18          THE COURT:  All right.  Can you get it to me tonight?

19          MR. LOMAX:  I'll try.  If you give me an e-mail, I

20     will.

21          THE COURT:  Well, what I'd actually prefer, you would

22     have to -- are you agreeing to this, Mr. Lomax?

23          MR. LOMAX:  What you just said, yes.

24          MR. DAHAN:  Your Honor, could I just add one thing,

25     your Honor?

 1          MR. LOMAX:  For C, yes, your Honor.

 2          MR. DAHAN:  Your Honor, I think your Honor earlier

 3  had said that the arbitrator will be selected, shall be

 4  selected in accordance with --

 5          THE COURT:  Yes.

 6          MR. DAHAN:  Okay.  By Monday.

 7          THE COURT:  Yes.

 8          MR. DAHAN:  Okay.  February 18th.  Okay.

 9          THE COURT:  Well, that's a holiday.

10          MR. LOMAX:  That's why I put the 19th.  I didn't

11  cross out --

12          THE COURT:  It would be helpful to both sides to get

13  it done by the 18th.

14          MR. DAHAN:  Yes.

15          MR. LOMAX:  I'm fine.  I'm working Monday.

16          MR. DAHAN:  Okay.  I will, too, your Honor.

17          THE COURT:  Why don't you send me a consent order.

18          MR. LOMAX:  I can't e-file, your Honor, without my

19  secretary and she's going to be gone.  Do you have people

20  there?

21          MR. DAHAN:  Yes, I can call my office and see if I

22  can have somebody stay back, your Honor, to get it e-filed.

23          THE COURT:  I can get you an e-mail to send it that

24  can be then sent to me for my approval.  I'm getting on an

25  airplane tomorrow morning and going out of the country.  I'll

 1  approve it tonight.  You may not see a signed copy until --

 2  agree on it and submit it.  If you do not hear from me by

 3  tomorrow morning at nine o'clock, assuming it's been approved,

 4  you'll get a file copy on Tuesday morning.  Is that sufficient

 5  for the parties' purposes?

 6          MR. LOMAX:  What time does everybody leave here, your

 7  Honor?  Maybe we can write it up and initial it and have your

 8  Honor sign it.

 9          THE COURT:  That would be preferable.

10          MR. LOMAX:  Why don't we do that.

11          THE COURT:  All right.

12          MR. DAHAN:  That's fine, your Honor.

13          MR. LENTZ:  I have my laptop right here.

14          MR. LOMAX:  You do?

15          MR. LENTZ:  Yes.

16          THE COURT:  All right.  And then you can e-mail it to

17  Ms. Novoa and then I'll sign it.

18          MR. DAHAN:  And, your Honor, just with respect to the

19  mediation, we had a provision in there that we would -- the

20  parties would select one mediator within three days, and if we

21  can't, then your Honor would appoint a mediator within three

22  days thereafter.  Is that acceptable?

23          THE COURT:  It's acceptable to me.

24          MR. DAHAN:  Because again, we just want to keep this

25  moving, and --

```
 1          MR. LOMAX:  Is everyone agreeable to Judge Schneider?

 2          MR. DAHAN:  Your Honor, we have no --

 3          MR. LOMAX:  Maybe Judge Hillman can check on Judge

 4  Schneider's availability.

 5          MR. DAHAN:  Your Honor, that's acceptable to us if

 6  it's acceptable to your Honor.

 7          THE COURT:  It certainly is.  I just can't speak for

 8  him.  He might be here, might not.  I'm happy to have him do

 9  it.  I'm always happy to have the parties agree on a mediator,

10  but we have a list, but it's better when the parties agree.

11      So, I would just include the provision that you

12  described, and then if Judge Schneider takes it, then that's

13  great.  If he doesn't, you can pick someone else.  And if you

14  can't resolve it, then you can come back to me next week and

15  I'll pick somebody.

16          MR. DAHAN:  Okay.

17          MR. LOMAX:  Judge, as far as the time, place and

18  manner for the mediation --

19          THE COURT:  Yes.

20          MR. LOMAX:  -- we'll leave that up to the mediator,

21  too?

22          THE COURT:  Yes.

23          MR. LOMAX:  Okay.

24          THE COURT:  And that's rule, local civil Rule 301.1.

25  So, the order should make clear that I'm appointing the
```

```
 1   mediator --
 2           MR. LENTZ:  301.1?
 3           THE COURT:  301.1, pursuant to the terms of that
 4   rule.
 5           MR. LENTZ:  Okay.
 6           THE COURT:  As modified as follows, and then you can
 7   include the provisions you have agreed to.
 8         All right.  So, why don't I leave you to some
 9   wordsmithing and then you can let me know when you're ready
10   and I'll review it and sign it.
11           MR. DAHAN:  Thank you, your Honor.
12           MR. LOMAX:  Thank you, your Honor.
13           THE COURT:  Thank you all.
14           THE DEPUTY COURT CLERK:  All rise.
15           (Proceedings concluded at 4:29 p.m..)
16
17
18
19
20
21
22
23
24
25
```

## $

**$3,000** [1] - 40:16
**$63,000** [1] - 40:16

## /

**/S** [1] - 1:22

## 0

**08034** [1] - 1:18
**08053-3900** [1] - 1:15
**08080** [1] - 2:4
**08101** [1] - 1:9

## 1

**1** [1] - 14:23
**10** [2] - 9:21, 15:2
**10th** [1] - 29:9
**12** [2] - 6:24, 31:11
**1230** [1] - 1:18
**13th** [1] - 11:12
**15** [2] - 1:9, 39:15
**15th** [2] - 29:21, 29:25
**18** [1] - 15:1
**18th** [2] - 47:8, 47:13
**19-cv-05124-NLH-JS**
  [1] - 1:4
**19th** [2] - 36:7, 47:10

## 2

**2** [1] - 14:23
**2/21/19** [1] - 36:21
**20** [2] - 3:14, 29:4
**200** [1] - 2:3
**2015** [1] - 9:9
**2018** [2] - 15:1, 15:2
**2019** [8] - 1:9, 15:2,
  31:13, 36:8, 39:15,
  44:19, 45:17, 46:4
**20th** [2] - 31:20, 31:22
**21st** [9] - 34:18, 36:8,
  37:10, 41:1, 41:21,
  42:2, 43:6, 43:14,
  46:4
**22nd** [1] - 35:2
**27** [1] - 15:1
**28** [1] - 1:21
**28th** [1] - 24:5
**29th** [3] - 8:9, 23:22,
  23:24

## 3

**3** [1] - 14:23
**3,000** [1] - 32:15
**30** [2] - 45:1, 45:19

**30-day** [1] - 44:15
**301.1** [3] - 49:24, 50:2,
  50:3
**30th** [1] - 23:23
**3:00** [1] - 33:5
**3:24** [2] - 1:10, 3:1

## 4

**4** [1] - 35:23
**4(g** [5] - 6:15, 18:13,
  18:24, 20:11, 20:14
**4.1(a** [1] - 23:13
**4.1(g** [13] - 6:15,
  13:18, 17:6, 21:1,
  22:11, 23:13, 24:17,
  25:16, 29:16, 35:20,
  36:6, 36:11, 46:7
**4.1(g)** [2] - 22:1, 42:1
**4.2(a** [1] - 23:9
**4.4** [2] - 16:12, 44:20
**45** [1] - 32:17
**4:29** [1] - 50:15
**4th** [1] - 1:8

## 5

**5** [1] - 35:23
**50** [3] - 5:17, 5:18,
  11:17
**591** [1] - 2:3

## 6

**6000** [1] - 1:15
**609-462-4384** [1] -
  1:25
**62-year-old** [1] - 10:10
**63,000** [1] - 32:14
**6301** [1] - 1:15

## 7

**753** [1] - 1:21

## A

**ability** [2] - 28:8, 46:14
**absolutely** [1] - 5:23
**acceded** [1] - 31:2
**accept** [1] - 12:13
**acceptable** [6] -
  12:25, 48:22, 48:23,
  49:5, 49:6
**access** [1] - 39:22
**accommodations** [1]
  - 37:23
**accordance** [6] -
  27:14, 31:11, 35:19,
  36:5, 44:19, 47:4

**account** [8] - 14:18,
  16:21, 17:13, 17:14,
  17:21, 20:17, 20:18
**accounts** [2] - 18:21,
  20:20
**Act** [1] - 25:15
**act** [1] - 38:21
**action** [7] - 14:7,
  16:16, 18:25, 19:3,
  19:16, 22:13, 40:23
**ACTION** [1] - 1:4
**adage** [1] - 39:25
**add** [6] - 9:21, 16:22,
  35:14, 36:18, 36:23,
  46:24
**additional** [2] - 10:7,
  20:19
**address** [9] - 21:6,
  21:24, 26:18, 27:21,
  31:12, 31:14, 34:6,
  35:25, 39:11
**addressed** [2] - 26:5,
  35:5
**adjourned** [1] - 8:17
**adjournment** [1] -
  8:13
**adjudication** [1] - 31:1
**ADR** [3] - 34:1, 34:10,
  34:14
**advantage** [1] - 39:24
**adversaries** [1] -
  37:22
**advised** [1] - 26:25
**afternoon** [4] - 3:3,
  3:20, 7:21, 11:10
**ago** [2] - 8:21, 8:22
**agree** [29] - 6:17, 6:22,
  7:2, 15:5, 16:16,
  17:8, 18:1, 18:15,
  18:21, 18:25, 19:16,
  19:20, 22:13, 22:23,
  24:2, 24:13, 28:4,
  28:14, 33:15, 33:22,
  38:11, 40:3, 41:3,
  43:7, 43:20, 45:5,
  48:2, 49:9, 49:10
**agreeable** [2] - 18:5,
  49:1
**agreed** [11] - 6:1, 6:25,
  8:4, 8:21, 15:11,
  23:22, 35:7, 40:13,
  43:7, 45:3, 50:7
**agreeing** [2] - 5:23,
  46:22
**agreement** [46] - 5:6,
  5:16, 6:18, 6:23,
  7:12, 9:2, 9:6, 13:1,
  13:15, 13:16, 14:12,
  16:5, 16:13, 18:8,
  20:24, 21:24, 22:17,

23:2, 23:17, 23:20,
  24:2, 24:7, 24:8,
  24:20, 25:13, 26:15,
  27:1, 28:14, 31:12,
  33:14, 35:4, 35:10,
  35:13, 35:20, 36:6,
  37:3, 38:5, 38:13,
  40:13, 40:18, 40:24,
  42:18, 43:12, 43:24,
  44:20, 45:4
**ahead** [1] - 37:14
**airplane** [1] - 47:25
**al** [2] - 1:2, 1:5
**AI** [1] - 10:10
**almost** [1] - 26:23
**amount** [1] - 28:10
**aneurysm** [1] - 37:16
**annual** [2] - 9:10, 10:3
**answer** [2] - 20:16,
  20:25
**anyway** [4] - 17:12,
  30:8, 40:4, 40:5
**aortic** [1] - 37:16
**apologize** [2] - 29:2,
  39:8
**appear** [3] - 20:13,
  25:12, 37:19
**appearances** [1] - 3:4
**application** [8] - 6:19,
  8:9, 8:24, 23:23,
  25:1, 25:7, 27:14
**applies** [1] - 20:11
**appoint** [1] - 48:21
**appointing** [1] - 49:25
**appreciate** [5] - 24:11,
  27:25, 28:1, 42:7,
  46:13
**approach** [2] - 7:23,
  12:14
**appropriate** [7] - 5:7,
  5:10, 7:8, 7:9, 20:23,
  37:3, 41:22
**approval** [4] - 14:11,
  31:12, 31:14, 47:24
**approve** [4] - 15:8,
  16:8, 16:10, 48:1
**approved** [3] - 15:15,
  16:1, 48:3
**approving** [1] - 44:19
**arbitrable** [3] - 6:3,
  7:14, 41:9
**arbitrate** [10] - 5:15,
  5:20, 5:22, 5:23,
  28:5, 28:9, 28:13,
  31:20, 38:3, 40:13
**Arbitration** [1] - 25:15
**arbitration** [72] - 5:15,
  5:25, 6:2, 6:4, 6:5,
  6:10, 6:14, 6:22,
  7:13, 11:22, 13:15,

14:3, 16:3, 16:23,
  17:5, 17:6, 17:7,
  18:2, 18:6, 18:10,
  19:5, 19:18, 19:19,
  21:7, 21:13, 21:20,
  21:25, 23:24, 24:3,
  24:16, 24:18, 25:3,
  25:4, 25:8, 25:14,
  25:16, 26:6, 26:20,
  27:13, 28:19, 29:18,
  31:13, 32:3, 34:17,
  35:3, 35:12, 35:18,
  36:2, 36:7, 36:10,
  36:12, 36:14, 38:6,
  38:15, 39:12, 39:13,
  40:19, 41:3, 41:8,
  41:11, 42:4, 42:23,
  43:22, 44:1, 44:4,
  45:19, 45:24, 46:1,
  46:3, 46:6
**arbitrator** [63] - 6:3,
  6:6, 7:14, 12:5,
  18:11, 18:15, 20:12,
  22:7, 22:21, 22:24,
  23:5, 23:6, 23:12,
  23:15, 24:18, 24:19,
  24:24, 25:7, 25:9,
  25:17, 25:19, 26:14,
  26:15, 27:12, 27:16,
  31:21, 33:3, 33:9,
  34:3, 34:4, 34:6,
  34:9, 36:5, 36:13,
  36:14, 37:1, 37:4,
  37:6, 37:8, 37:22,
  38:1, 38:7, 38:16,
  41:8, 41:20, 41:21,
  42:4, 42:6, 42:9,
  42:15, 42:20, 42:25,
  43:4, 43:10, 43:11,
  43:21, 43:23, 46:3,
  46:8, 47:3
**arbitrator's** [5] -
  26:12, 42:16, 42:19,
  43:9, 43:13
**arbitrators** [4] - 22:25,
  31:18, 31:23, 33:23
**areas** [4] - 5:15, 5:20,
  5:22, 18:2
**argue** [1] - 19:9
**argument** [3] - 23:20,
  35:10, 42:19
**arguments** [2] - 42:24,
  43:10
**arises** [3] - 14:1, 20:5,
  46:3
**Article** [1] - 31:11
**assume** [3] - 30:15,
  37:22, 38:1
**assuming** [3] - 21:1,
  34:19, 48:3

assumptions [1] - 32:16
attached [1] - 15:16
attempted [1] - 14:7
attempting [1] - 40:8
attempts [1] - 34:25
attend [1] - 44:7
attendance [2] - 36:3, 46:9
attention [1] - 43:9
attorney [2] - 27:12, 39:19
authority [1] - 42:19
authorizes [1] - 40:22
availability [1] - 49:4
available [8] - 9:13, 27:12, 27:20, 31:19, 31:22, 33:3, 33:4, 45:9
avoid [1] - 33:24
aware [1] - 18:18

**B**

bad [1] - 30:24
Baker [16] - 10:10, 14:8, 15:2, 15:8, 16:7, 16:9, 28:7, 29:9, 29:22, 32:5, 32:21, 37:15, 37:16, 38:25, 39:21, 42:1
barn [1] - 7:6
based [2] - 6:1, 12:3
basis [1] - 32:20
bear [1] - 12:23
became [1] - 11:8
become [1] - 14:3
begin [1] - 24:5
behalf [3] - 3:7, 3:21, 4:20
believes [1] - 6:5
below [2] - 35:19, 45:24
Ben [1] - 11:3
bench [1] - 7:24
benefit [1] - 35:5
better [3] - 11:4, 12:20, 49:10
between [3] - 5:17, 6:25, 44:21
big [1] - 9:1
biggest [2] - 9:7, 32:11
binding [7] - 6:14, 6:16, 17:5, 17:7, 35:11, 35:12, 35:15
BIRNBAUM [1] - 2:2
Birnbaum [1] - 3:21
bit [1] - 27:7
blow [1] - 7:17

Bob@Tate [1] - 1:24
Bob@Tate-Tate.com [1] - 1:24
BOCHETTO [1] - 1:17
body [1] - 21:23
bones [2] - 10:13, 10:14
bottom [2] - 5:25, 8:21
Boulevard [1] - 2:3
Brace [1] - 1:18
break [1] - 5:16
briefly [2] - 25:20, 27:24
bringing [1] - 43:8
broad [1] - 44:21
Bubba [1] - 10:10
buckets [1] - 26:23
budget [5] - 16:11, 31:13, 41:1, 44:19, 45:17
Building [1] - 1:8
building [1] - 21:15
bunch [2] - 30:12, 39:15
business [13] - 10:20, 11:24, 11:25, 14:11, 14:12, 22:21, 32:2, 33:7, 34:1, 34:10, 34:14, 35:1, 44:3
busy [1] - 45:13
BY [3] - 1:14, 1:17, 2:3

**C**

calendar [2] - 27:20, 31:25
Camden [2] - 1:9, 44:8
canceled [1] - 15:3
cannot [5] - 16:16, 18:25, 19:16, 22:13, 42:6
care [2] - 29:18, 44:9
carefully [2] - 16:14, 40:16
carrier [1] - 8:14
carves [1] - 19:22
case [6] - 7:3, 9:1, 9:24, 10:1, 17:16, 33:11
cattle [1] - 7:6
caucusing [1] - 21:17
CCR [1] - 1:22
certain [3] - 5:9, 18:15, 44:13
certainly [3] - 18:9, 45:14, 49:7
certification [3] - 24:10, 27:3, 35:1
Certified [1] - 1:21
certified [1] - 8:15

chain [2] - 9:3, 9:6
chance [1] - 21:14
change [3] - 6:20, 13:10, 21:9
changed [1] - 8:23
changes [3] - 6:17, 7:25, 12:24
check [2] - 12:12, 49:3
Cherry [1] - 1:18
choose [1] - 33:17
CIVIL [1] - 1:4
civil [2] - 40:22, 49:24
claimed [2] - 17:17, 32:14
claiming [1] - 8:13
claims [1] - 15:10
classic [1] - 16:6
clause [2] - 20:23, 21:7
clauses [1] - 18:7
clear [8] - 24:6, 26:7, 41:5, 42:3, 42:15, 43:3, 45:22, 49:25
clearly [6] - 16:1, 16:5, 17:6, 22:11, 23:2, 23:17, 23:21, 35:5, 40:19
CLERK [2] - 3:2, 50:14
Cleveland [5] - 11:13, 11:14, 14:20, 29:22, 37:18
client [22] - 3:17, 4:7, 4:20, 5:17, 5:18, 10:9, 11:17, 15:14, 18:1, 18:14, 19:2, 26:25, 28:10, 30:13, 30:25, 32:11, 32:13, 32:14, 40:8, 44:6
client's [3] - 11:13, 11:14, 28:16
clients [1] - 39:20
Cohen [1] - 1:8
combatants [1] - 10:1
comfortable [3] - 45:6, 45:7, 45:9
commencing [1] - 1:10
comments [3] - 8:8, 12:19, 13:6
community [1] - 33:8
companies [1] - 24:14
COMPANY [1] - 1:5
company [17] - 5:19, 9:8, 9:13, 9:22, 9:24, 10:1, 11:18, 14:13, 22:20, 24:15, 29:25, 35:18, 35:20, 36:6, 39:24, 43:18, 45:23
compelling [1] - 31:10
complaint [1] - 17:18

completed [2] - 22:8, 23:24
complied [1] - 24:1
complies [1] - 42:1
computer [1] - 39:22
concede [1] - 19:10
concern [6] - 27:18, 28:1, 28:5, 34:23, 40:11, 41:24
conclude [2] - 36:8, 46:4
concluded [1] - 50:15
concluding [1] - 34:17
conditions [2] - 7:11, 7:19
conduct [2] - 25:16, 44:4
conducted [2] - 22:1, 26:21
confidential [1] - 10:16
confidentiality [2] - 9:15, 30:6
connection [2] - 18:6, 20:20
consent [30] - 4:17, 4:20, 5:3, 5:11, 6:19, 7:25, 8:20, 12:22, 16:17, 17:24, 18:12, 18:16, 19:1, 19:4, 19:17, 20:6, 22:4, 22:9, 22:16, 24:13, 35:9, 36:15, 38:11, 40:23, 41:12, 41:13, 42:7, 42:8, 44:14, 47:17
consider [1] - 15:6
considering [1] - 40:4
consistent [2] - 12:25, 40:18
contentious [1] - 33:10
continue [1] - 45:19
Continued [1] - 2:1
control [1] - 38:10
convened [1] - 23:7
convinced [1] - 43:15
cool [1] - 10:12
cooler [1] - 32:2
Cooper [1] - 1:8
copied [1] - 29:23
copies [1] - 8:13
copy [4] - 7:24, 13:16, 48:1, 48:4
corners [1] - 23:19
corporate [1] - 32:5
correct [12] - 1:21, 13:11, 13:24, 14:6, 16:19, 16:24, 20:3, 25:9, 41:9, 41:15,

45:6, 45:8
correctly [1] - 44:11
cost [2] - 36:4, 46:10
counsel [14] - 11:1, 11:3, 11:8, 11:9, 14:20, 15:13, 21:8, 21:10, 21:15, 27:18, 28:7, 29:22, 32:5, 34:7
country [1] - 47:25
couple [1] - 17:3
COURT [124] - 1:1, 3:2, 3:3, 3:10, 3:16, 3:18, 3:24, 4:1, 4:6, 4:12, 4:15, 8:2, 8:6, 9:10, 9:18, 9:21, 12:7, 12:9, 12:15, 12:17, 13:2, 13:5, 13:9, 13:12, 13:19, 13:22, 13:25, 14:9, 14:16, 14:21, 15:4, 16:14, 16:20, 17:2, 17:10, 17:12, 17:23, 18:9, 18:23, 19:8, 19:14, 19:21, 19:25, 20:4, 20:9, 21:4, 21:24, 24:10, 25:6, 25:11, 25:21, 26:1, 26:7, 26:19, 27:3, 27:6, 27:22, 28:25, 29:7, 29:12, 29:14, 29:19, 30:4, 30:8, 30:11, 30:17, 31:4, 31:6, 31:16, 33:2, 33:14, 33:17, 33:21, 34:8, 34:12, 34:16, 34:21, 34:23, 35:8, 35:24, 36:2, 36:23, 36:25, 37:11, 37:14, 37:19, 37:21, 38:1, 38:9, 38:18, 40:2, 40:7, 41:10, 41:17, 41:20, 42:3, 43:5, 43:7, 44:6, 44:17, 44:24, 45:2, 45:11, 46:13, 46:18, 46:21, 47:5, 47:7, 47:9, 47:12, 47:17, 47:23, 48:9, 48:11, 48:16, 48:23, 49:7, 49:19, 49:22, 49:24, 50:3, 50:6, 50:13, 50:14
Court [20] - 1:24, 3:6, 5:1, 6:4, 7:21, 8:1, 8:12, 8:16, 8:22, 12:2, 12:23, 17:20, 25:2, 30:22, 30:24, 33:20, 40:10, 40:11, 40:15, 42:5
court [6] - 3:1, 6:19,

6:20, 7:1, 7:17, 44:16
**Courthouse** [1] - 1:8
**create** [1] - 21:3
**crickets** [1] - 30:21
**critical** [1] - 39:12
**cross** [1] - 47:11
**crossed** [1] - 32:23
**CRR** [1] - 1:22
**customers** [1] - 10:15

## D

**DAHAN** [76] - 1:14, 3:6, 3:12, 4:3, 4:10, 5:13, 8:7, 9:12, 10:17, 12:6, 12:8, 12:13, 12:18, 13:4, 13:8, 13:11, 13:18, 13:21, 13:24, 14:6, 14:15, 14:24, 15:7, 16:19, 16:25, 17:3, 17:13, 18:3, 18:18, 19:6, 19:12, 19:20, 19:24, 20:2, 20:16, 21:5, 22:2, 24:21, 25:10, 25:23, 26:2, 26:17, 26:22, 27:5, 27:11, 27:17, 33:4, 34:3, 38:17, 38:23, 39:4, 39:9, 41:14, 41:18, 41:24, 43:2, 43:6, 43:25, 44:10, 44:23, 45:1, 45:3, 46:24, 47:2, 47:6, 47:8, 47:14, 47:16, 47:21, 48:12, 48:18, 48:24, 49:2, 49:5, 49:16, 50:11
**Dahan** [19] - 3:6, 3:10, 4:17, 5:11, 5:12, 5:13, 5:14, 8:6, 12:17, 13:14, 14:21, 17:23, 24:10, 25:21, 28:25, 30:11, 33:2, 40:7
**Dahan's** [2] - 11:3, 29:15
**date** [3] - 33:2, 42:22, 43:17
**daughter** [1] - 39:21
**David** [1] - 3:6
**DAVID** [1] - 1:14
**days** [11] - 22:21, 23:11, 23:12, 23:13, 23:14, 32:7, 45:1, 45:19, 48:20, 48:22
**deadline** [2] - 28:22, 31:20
**deadlock** [27] - 13:23,

14:1, 16:6, 18:19, 19:7, 19:10, 20:21, 20:24, 21:1, 21:3, 22:12, 22:18, 22:21, 23:3, 23:15, 23:21, 24:16, 24:22, 25:5, 25:24, 35:19, 35:21, 45:24, 46:6, 46:7
**deadlocked** [15] - 24:20, 25:12, 25:17, 25:19, 26:11, 26:14, 29:16, 36:11, 37:7, 41:22, 42:10, 42:12, 42:17, 42:23, 43:16
**deadlocks** [2] - 5:17, 5:19
**deal** [7] - 4:24, 28:9, 32:10, 32:12, 32:14, 32:25
**dealing** [3] - 11:2, 37:4
**December** [2] - 15:1
**decide** [3] - 25:19, 36:20, 43:14
**decided** [6] - 28:21, 36:22, 39:12, 42:22, 43:3, 46:2
**decides** [1] - 41:9
**decision** [3] - 6:3, 12:3, 23:15
**deems** [1] - 25:17
**defeat** [1] - 19:18
**defeating** [1] - 35:3
**defendant** [1] - 4:5
**defendants** [11] - 8:11, 15:13, 15:23, 17:15, 18:5, 18:20, 20:19, 23:18, 25:2, 31:10, 39:18
**Defendants** [2] - 1:6, 2:4
**defense** [1] - 27:18
**define** [1] - 44:22
**defined** [5] - 24:17, 25:13, 29:16, 37:2, 46:6
**definition** [1] - 19:9
**delay** [4] - 8:11, 28:8, 30:12, 31:1
**delaying** [1] - 35:3
**delays** [1] - 26:20
**delineate** [1] - 6:9
**demand** [1] - 31:24
**demonstrate** [1] - 26:13
**dependent** [1] - 35:13
**DEPUTY** [2] - 3:2, 50:14
**described** [6] - 14:14, 24:16, 35:19, 41:4,

45:24, 49:12
**describes** [1] - 13:22
**designated** [1] - 26:21
**details** [1] - 22:3
**determination** [2] - 26:12, 36:12
**determine** [7] - 6:6, 24:19, 38:16, 41:11, 42:11, 42:15, 42:25
**determined** [8] - 24:18, 25:8, 36:12, 36:14, 37:3, 38:3, 43:22, 46:8
**determines** [1] - 41:21
**detract** [1] - 42:21
**develop** [1] - 16:10
**developing** [1] - 44:18
**DF** [2] - 3:17, 29:2
**diabetic** [1] - 39:5
**difference** [1] - 32:15
**different** [7] - 15:4, 16:12, 18:9, 18:12, 26:23, 32:16, 33:13
**difficult** [1] - 21:19
**difficulties** [2] - 21:21, 37:24
**direct** [3] - 26:20, 35:17, 44:17
**directing** [2] - 24:14, 25:15
**directs** [1] - 38:10
**disagreement** [2] - 20:14, 22:18
**discretion** [1] - 36:24
**discuss** [1] - 16:10
**discussed** [2] - 12:5, 34:25, 37:15
**discussion** [1] - 30:18
**discussions** [1] - 15:8
**dispute** [8] - 6:25, 15:23, 18:2, 29:14, 29:20, 31:6, 44:3, 46:2
**disputes** [4] - 22:7, 25:14, 40:14, 40:17
**disputing** [2] - 28:15, 28:16
**DISTRICT** [3] - 1:1, 1:1, 1:11
**distrust** [1] - 32:12
**document** [1] - 6:15
**documents** [3] - 10:5, 10:8, 11:19
**dog** [1] - 27:8
**dollar** [2] - 32:12, 32:17
**done** [11] - 32:1, 32:3, 32:4, 34:20, 37:6, 37:7, 38:21, 38:22, 42:2, 43:19, 47:13

**dotted** [1] - 32:23
**double** [1] - 9:22
**doubt** [2] - 30:17, 42:10
**down** [7] - 28:8, 28:24, 30:20, 32:3, 40:15, 42:5, 44:5
**drafted** [1] - 19:21
**drink** [1] - 40:1
**Drive** [1] - 1:15
**duly** [3] - 22:17, 23:7, 23:10
**during** [1] - 22:15

## E

**e-file** [1] - 47:18
**e-filed** [1] - 47:22
**e-mail** [8] - 11:13, 15:14, 29:21, 39:14, 39:16, 46:19, 47:23, 48:16
**e-mails** [2] - 15:16, 15:19
**easier** [1] - 40:6
**either** [6] - 12:24, 14:23, 18:19, 21:10, 36:19, 46:5
**emergency** [3] - 28:3, 28:9, 28:23
**encourage** [1] - 40:19
**encourages** [1] - 42:13
**end** [1] - 28:16
**enforce** [1] - 40:17
**enter** [4] - 24:14, 35:10, 40:9, 42:8
**entered** [6] - 14:13, 35:14, 40:13, 40:19, 43:12, 43:23
**entering** [2] - 9:2, 9:5
**enterprise** [1] - 3:23
**entitled** [1] - 11:18
**entity** [1] - 29:5
**equitable** [2] - 40:12, 43:16
**equity** [3] - 3:15, 29:4, 42:6
**ESQUIRE** [3] - 1:14, 1:17, 2:3
**essential** [1] - 35:3
**established** [1] - 24:22
**establishing** [1] - 17:20
**et** [2] - 1:2, 1:5
**eve** [2] - 8:19, 30:23
**evidence** [1] - 34:25
**except** [1] - 8:14
**exchange** [1] - 31:17

**exchanged** [1] - 5:8
**excited** [1] - 15:20
**exists** [1] - 11:16
**expedited** [3] - 35:15, 44:18, 45:16
**expense** [2] - 36:4, 45:5, 46:10
**expenses** [2] - 36:3, 46:8
**experience** [1] - 21:12
**explain** [2] - 12:24, 29:1
**explaining** [2] - 15:14, 15:19
**Express** [1] - 8:16
**expressed** [2] - 27:18
**extend** [1] - 44:15
**extremely** [2] - 21:19, 26:24

## F

**facility** [1] - 15:17
**fact** [2] - 24:19, 40:9
**factual** [1] - 29:14
**fails** [1] - 7:1
**fair** [4] - 14:3, 21:4, 27:25, 36:19
**fairly** [3] - 16:15, 34:11, 34:24
**faith** [5] - 18:12, 30:18, 35:6, 38:21, 40:8
**fall** [3] - 7:12, 18:7, 20:23
**Fame** [1] - 10:11
**family** [1] - 15:20
**far** [8] - 6:22, 8:5, 9:6, 15:23, 24:8, 25:2, 44:4, 49:17
**February** [1] - 1:9, 11:12, 24:5, 29:21, 29:25, 34:18, 36:7, 36:8, 39:15, 40:25, 42:2, 46:4, 47:8
**federal** [5] - 25:9, 25:13, 38:9, 40:18, 42:3
**Federal** [2] - 8:16, 25:14
**field** [1] - 6:10
**figure** [1] - 27:8
**file** [3] - 8:24, 47:18, 48:4
**filed** [7] - 4:22, 5:24, 8:9, 11:5, 12:22, 23:23, 47:22
**financial** [1] - 39:23
**fine** [5] - 34:5, 34:9, 36:18, 47:15, 48:12

**finish** [3] - 17:10, 25:21, 35:24
**firm** [2] - 3:7, 3:21
**first** [9] - 7:9, 9:24, 13:3, 13:10, 27:15, 28:21, 38:10, 38:24, 39:6
**five** [3] - 22:21, 23:12, 34:17
**flight** [1] - 37:17
**Florida** [2] - 11:1, 37:18
**fly** [1] - 37:16
**FOFBAKERS** [1] - 1:5
**FOFBakers** [1] - 3:4
**followed** [2] - 18:1, 18:13
**following** [1] - 35:9
**follows** [1] - 50:6
**food** [1] - 9:16
**FOR** [1] - 1:1
**form** [6] - 4:25, 6:1, 6:8, 6:13, 31:9, 45:25
**formal** [2] - 19:22, 25:1
**former** [1] - 33:6
**forth** [5] - 17:18, 21:17, 24:8, 25:15, 29:11
**forward** [4] - 9:4, 9:5, 15:21, 24:6
**foundation** [1] - 40:21
**four** [1] - 23:19
**frame** [3] - 26:21, 37:3, 44:24
**franchise** [11] - 9:3, 9:6, 9:13, 9:17, 22:6, 24:5, 26:25, 28:9, 28:13, 28:21, 32:4
**franchising** [1] - 37:9
**franchisor** [3] - 10:6, 10:19, 32:13
**frankly** [3] - 28:17, 30:22, 40:14
**fraught** [1] - 5:19
**Friday** [1] - 27:1
**fringe** [1] - 22:4
**frustrate** [1] - 30:25
**fully** [1] - 43:13

### G

**Gavin** [3] - 3:13, 29:23, 32:6
**GAVIN** [1] - 1:17
**generally** [2] - 25:9, 42:3
**given** [2] - 35:1, 43:17
**glove** [1] - 26:9

**governs** [1] - 23:10
**grant** [2] - 4:12, 29:2
**granted** [2] - 3:13, 4:14
**great** [4] - 10:23, 44:14, 44:15, 49:13
**Greg** [1] - 3:20
**GREGORY** [1] - 2:3
**guy** [3] - 32:19, 32:21, 34:11
**guys** [3] - 10:21, 10:24, 34:10

### H

**h)** [1] - 13:21
**Hall** [1] - 10:11
**hand** [4] - 12:9, 13:17, 26:9, 42:22
**handed** [1] - 12:21
**handle** [2] - 27:12, 27:19
**happy** [4] - 25:22, 30:22, 49:8, 49:9
**heads** [1] - 32:2
**health** [1] - 38:20
**hear** [7] - 13:13, 25:22, 26:15, 27:4, 35:9, 40:5, 48:2
**heard** [4] - 25:20, 27:23, 35:23, 37:12
**Hearing** [1] - 1:7
**hearing** [9] - 8:12, 8:17, 8:19, 27:15, 28:18, 30:24, 31:4, 31:6, 39:7
**heavily** [1] - 23:18
**Heben** [6] - 15:13, 29:21, 32:4, 32:20, 39:15
**held** [1] - 22:17
**help** [2] - 9:23, 16:10
**helpful** [3] - 8:4, 31:1, 47:12
**hence** [1] - 10:23
**herein** [1] - 41:6
**hereinafter** [1] - 22:18
**Hill** [1] - 1:18
**HILLMAN** [1] - 1:11
**Hillman** [1] - 49:3
**hired** [2] - 4:22, 11:7
**history** [4] - 15:24, 15:25, 34:24, 39:17
**hold** [6] - 7:4, 15:4, 17:10, 20:9, 41:24
**holder** [1] - 3:15
**Holding** [1] - 3:5
**HOLDING** [1] - 1:5
**holiday** [1] - 47:9
**Honor** [112] - 3:12,

3:13, 3:20, 4:11, 4:21, 7:22, 7:23, 8:7, 8:23, 8:25, 9:12, 9:23, 12:6, 12:14, 12:18, 12:22, 12:23, 13:1, 13:8, 13:11, 13:17, 13:18, 13:24, 14:5, 14:6, 14:15, 14:24, 14:25, 15:7, 15:12, 15:22, 16:4, 16:12, 16:19, 16:24, 16:25, 17:5, 17:9, 17:14, 18:4, 18:18, 19:6, 19:20, 20:3, 20:8, 20:16, 20:21, 21:2, 21:5, 21:12, 21:16, 21:19, 22:2, 22:6, 22:11, 23:1, 23:9, 23:25, 24:21, 25:10, 25:23, 26:18, 26:22, 27:11, 27:13, 27:16, 27:24, 28:2, 29:13, 31:2, 33:6, 33:19, 35:23, 38:17, 38:23, 39:4, 39:9, 39:14, 39:25, 41:6, 41:12, 41:16, 41:23, 41:24, 41:25, 43:2, 43:25, 44:10, 44:11, 45:1, 45:8, 45:10, 46:24, 46:25, 47:1, 47:2, 47:16, 47:18, 47:22, 48:7, 48:8, 48:12, 48:18, 48:21, 49:2, 49:5, 49:6, 50:11, 50:12
**Honor's** [1] - 20:25
**HONORABLE** [1] - 1:11
**hoops** [1] - 14:23
**hope** [1] - 38:18
**hopeful** [1] - 32:1
**hopefully** [1] - 11:23
**horse** [1] - 40:1
**hours** [2] - 32:7
**hurt** [1] - 28:10
**Hyland** [1] - 3:7
**HYLAND** [1] - 1:14

### I

**I's** [1] - 32:23
**idea** [5] - 10:12, 10:20, 10:23, 32:22, 42:20
**identified** [10] - 20:2, 24:23, 24:25, 25:4, 29:15, 39:14, 41:15, 41:19, 43:3, 45:25
**identify** [1] - 24:23
**immediate** [1] - 17:17

**immediately** [5] - 24:15, 31:10, 35:18, 45:16, 45:23
**impasse** [2] - 5:9, 7:17
**imperative** [1] - 21:14
**importance** [3] - 39:13, 43:18, 45:18
**important** [7] - 8:8, 21:22, 24:23, 27:7, 30:20, 39:17, 42:21
**importantly** [1] - 21:12
**inability** [1] - 14:2
**inception** [1] - 7:3
**inclined** [1] - 35:8
**include** [4] - 19:4, 35:21, 49:11, 50:7
**included** [2] - 22:3, 22:9
**including** [3] - 22:9, 41:1, 41:10
**inconsistent** [1] - 5:5
**incorporate** [3] - 6:12, 18:2, 18:11
**indeed** [1] - 43:16
**independent** [1] - 22:24
**indicated** [1] - 41:25
**individual** [2] - 6:24, 22:19
**infancy** [1] - 9:8
**information** [23] - 9:12, 12:4, 14:11, 15:9, 16:8, 18:21, 20:6, 20:20, 20:22, 21:2, 21:3, 26:5, 29:24, 30:2, 30:13, 32:19, 32:24, 39:16, 39:19, 39:20, 39:22, 39:23, 40:9
**informing** [1] - 40:10
**inherent** [1] - 35:12
**initial** [1] - 48:7
**initiated** [1] - 17:16
**injunction** [5] - 6:20, 24:14, 30:23, 38:12, 42:7
**injunctive** [2] - 8:24, 17:17
**inspect** [1] - 15:18
**instance** [1] - 5:10
**intend** [1] - 35:25
**intent** [2] - 22:11, 23:20
**interest** [2] - 25:14, 43:17
**interesting** [1] - 23:1
**International** [1] - 29:3
**international** [7] - 9:3, 9:16, 24:4, 26:25,

28:13, 28:21, 32:4
**interrelated** [1] - 45:18
**intervene** [2] - 3:14, 4:14
**Intervenor** [1] - 1:19
**inventory** [1] - 39:23
**involved** [2] - 7:3, 32:7
**issue** [31] - 9:1, 11:20, 14:10, 15:24, 16:2, 16:11, 20:10, 25:17, 26:14, 26:17, 27:10, 28:2, 28:13, 28:21, 29:10, 30:20, 34:25, 36:19, 36:20, 36:22, 37:2, 37:9, 37:12, 38:14, 38:20, 39:1, 39:9, 39:11, 42:17, 42:21, 44:18
**issues** [44] - 4:18, 6:23, 9:1, 15:9, 18:6, 18:15, 18:16, 19:3, 19:9, 20:2, 20:5, 20:13, 23:3, 23:16, 23:21, 24:16, 24:22, 25:12, 28:4, 29:15, 35:19, 35:21, 36:10, 36:21, 39:5, 39:13, 40:25, 41:7, 41:14, 41:18, 41:19, 41:20, 42:9, 42:11, 42:16, 43:3, 43:9, 43:14, 44:21, 44:22, 45:18, 45:21, 45:24, 46:6
**items** [1] - 31:15

### J

**January** [5] - 8:9, 15:2, 23:22, 23:23, 29:9
**JERSEY** [1] - 1:1
**Jersey** [8] - 1:9, 1:15, 1:18, 2:4, 11:18, 36:3, 43:21, 44:2
**John** [1] - 39:19
**Jr** [1] - 3:9
**judge** [5] - 8:4, 33:10, 37:12, 46:11, 49:17
**Judge** [9] - 12:2, 29:8, 40:5, 45:9, 45:11, 49:1, 49:3, 49:12
**JUDGE** [1] - 1:11
**judges** [2] - 33:25, 45:13
**judgment** [1] - 15:19
**jumped** [1] - 14:23
**jurisdiction** [2] - 37:2, 42:16

## K

**keep** [3] - 45:12, 45:13, 48:24
**key** [1] - 39:12
**kind** [4] - 11:6, 26:22, 27:6, 34:1
**kinds** [1] - 40:14
**known** [1] - 33:25
**knows** [1] - 21:16

## L

**laptop** [1] - 48:13
**largest** [1] - 3:22
**last** [3] - 4:22, 23:5, 33:1
**LAULETTA** [1] - 2:2
**Lauletta** [1] - 3:21
**laundry** [1] - 29:23
**law** [9] - 3:7, 11:18, 25:9, 35:13, 38:10, 40:18, 42:3, 42:13, 42:15
**lawsuit** [5] - 5:24, 7:7, 11:5, 17:17, 17:19
**lawyer** [2] - 11:13, 11:14
**lead** [1] - 40:1
**leave** [6] - 7:14, 25:18, 37:21, 48:6, 49:20, 50:8
**left** [7] - 4:24, 33:19, 38:7, 38:15, 38:16, 39:2, 39:3
**legal** [1] - 33:8
**Lentz** [7] - 3:13, 3:18, 4:12, 10:22, 27:23, 29:1, 36:16
**LENTZ** [18] - 1:17, 1:17, 3:13, 3:17, 4:14, 8:4, 25:20, 27:24, 29:4, 29:8, 34:4, 36:17, 36:24, 37:9, 48:13, 48:15, 50:2, 50:5
**letter** [2] - 4:17, 5:1
**LEVIN** [1] - 1:14
**Levin** [5] - 3:7, 11:3, 11:13, 29:23, 32:5
**Lewis** [1] - 33:5
**light** [2] - 25:13, 26:20
**limit** [1] - 41:7
**limited** [1] - 38:13
**line** [4] - 5:25, 8:21, 12:10, 44:8
**lines** [1] - 7:25
**list** [3] - 29:23, 31:15, 49:10
**listen** [2] - 5:21, 37:22

**litigate** [1] - 44:16
**litigation** [1] - 33:11
**litigator** [1] - 33:7
**live** [1] - 21:22
**lives** [1] - 11:1
**LLC** [5] - 1:2, 1:5, 2:2, 3:8, 3:15
**LLP** [1] - 1:14
**local** [4] - 11:8, 11:9, 40:22, 49:24
**located** [2] - 44:2, 44:3
**loggerheads** [1] - 28:6
**LOMAX** [75] - 2:3, 3:20, 3:25, 4:4, 4:9, 4:21, 5:14, 8:3, 9:20, 9:23, 10:18, 12:11, 12:14, 12:16, 13:16, 14:5, 14:19, 14:22, 16:24, 17:9, 17:11, 20:7, 27:15, 29:13, 29:17, 29:20, 30:5, 30:10, 30:16, 31:2, 31:5, 31:8, 31:17, 33:10, 33:16, 33:18, 33:24, 34:5, 34:9, 34:13, 34:19, 34:22, 35:7, 35:23, 36:1, 37:12, 37:15, 37:20, 37:25, 38:8, 39:2, 39:8, 40:5, 41:5, 41:12, 41:23, 44:8, 46:6, 46:11, 46:16, 46:19, 46:23, 47:1, 47:10, 47:15, 47:18, 48:6, 48:10, 48:14, 49:1, 49:3, 49:17, 49:20, 49:23, 50:12
**Lomax** [22] - 3:21, 4:16, 12:9, 12:21, 14:17, 16:21, 18:3, 19:2, 20:4, 29:12, 34:16, 38:24, 38:25, 39:7, 39:14, 40:3, 41:3, 43:7, 43:25, 45:6, 46:22
**Lomax's** [3] - 8:8, 12:19, 42:8
**look** [4] - 8:1, 16:5, 23:9, 39:25
**looks** [2] - 30:24
**lose** [2] - 11:21, 14:9
**losing** [1] - 22:5
**lost** [1] - 35:2

## M

**mail** [11] - 8:15, 8:16, 11:13, 15:14, 29:21, 39:14, 39:16, 46:19,

47:23, 48:16
**mails** [2] - 15:16, 15:19
**major** [4] - 10:18, 11:10, 11:20, 24:4
**management** [1] - 5:16
**manager** [6] - 5:18, 11:17, 22:20, 23:10, 24:14
**managers** [15] - 5:17, 16:16, 18:25, 19:15, 22:13, 22:15, 22:19, 22:22, 22:23, 23:8, 23:10, 23:11, 24:15, 35:17, 45:23
**managing** [1] - 33:6
**mandates** [1] - 38:5
**manner** [5] - 36:13, 38:14, 43:22, 46:1, 49:18
**Mantua** [1] - 2:3
**Marlton** [1] - 1:15
**matter** [5] - 18:12, 26:16, 29:14, 42:6, 42:7
**matters** [1] - 43:11
**mean** [4] - 26:23, 33:25, 34:1, 44:2
**meaning** [2] - 25:18, 36:11
**means** [2] - 17:22, 34:12
**meat** [2] - 10:12, 10:24
**mechanism** [1] - 33:14
**mediate** [6] - 6:23, 7:1, 7:5, 7:15, 28:5, 44:15
**mediation** [35] - 6:22, 7:2, 7:14, 7:15, 11:23, 18:6, 18:22, 20:22, 20:23, 21:7, 21:13, 21:20, 25:16, 26:3, 26:6, 26:8, 26:10, 26:12, 28:20, 31:11, 40:21, 40:23, 40:24, 41:15, 44:11, 44:12, 44:18, 44:22, 44:25, 45:16, 45:19, 48:19, 49:18
**mediator** [11] - 12:5, 22:8, 41:2, 45:4, 45:7, 45:20, 48:20, 48:21, 49:9, 49:20, 50:1
**medical** [2] - 39:1, 39:5
**meeting** [7] - 15:1, 15:3, 22:22, 23:7,

23:11, 23:14, 30:19
**meetings** [7] - 14:25, 16:7, 16:9, 22:15, 22:16, 23:10, 30:14
**Meijers** [9] - 14:17, 16:21, 17:14, 17:21, 18:19, 20:18, 25:25, 28:2, 28:19
**member** [2] - 16:11, 22:20
**members** [4] - 6:24, 6:25, 9:25
**mere** [1] - 23:11
**met** [1] - 20:15
**method** [2] - 38:15, 43:22
**might** [4] - 10:11, 37:23, 49:8
**milestones** [1] - 24:8
**millions** [3] - 10:4, 10:7, 11:12
**minor** [1] - 5:8
**minority** [1] - 3:14
**misspoke** [1] - 4:9
**misunderstood** [1] - 16:20
**Mitchell** [1] - 1:8
**modified** [1] - 50:6
**Monday** [4] - 4:23, 36:6, 47:6, 47:15
**money** [3] - 29:5, 32:16, 32:21
**month** [1] - 30:16
**monthly** [1] - 29:11
**monumental** [1] - 31:22
**morass** [2] - 32:8, 32:18
**morning** [5] - 5:2, 18:4, 47:25, 48:3, 48:4
**mostly** [1] - 11:2
**motion** [4] - 3:14, 4:13, 4:14, 29:2
**move** [3] - 9:4, 9:5, 24:6
**moving** [2] - 15:21, 48:25
**MR** [165] - 3:6, 3:12, 3:13, 3:17, 3:20, 3:25, 4:3, 4:4, 4:9, 4:10, 4:14, 4:21, 5:13, 5:14, 8:3, 8:4, 8:7, 9:12, 9:20, 9:23, 10:17, 10:18, 12:6, 12:8, 12:11, 12:13, 12:14, 12:16, 12:18, 13:4, 13:8, 13:11, 13:16, 13:18, 13:21, 13:24, 14:5, 14:6,

14:15, 14:19, 14:22, 14:24, 15:7, 16:19, 16:24, 16:25, 17:3, 17:9, 17:11, 17:13, 18:3, 18:18, 19:6, 19:12, 19:20, 19:24, 20:2, 20:7, 20:16, 21:5, 22:2, 24:21, 25:10, 25:20, 25:23, 26:2, 26:17, 26:22, 27:5, 27:11, 27:15, 27:17, 27:24, 29:4, 29:8, 29:13, 29:17, 29:20, 30:5, 30:10, 30:16, 31:2, 31:5, 31:8, 31:17, 33:4, 33:10, 33:16, 33:18, 33:24, 34:3, 34:4, 34:5, 34:9, 34:13, 34:19, 34:22, 35:7, 35:23, 36:1, 36:17, 36:24, 37:9, 37:12, 37:15, 37:20, 37:25, 38:8, 38:17, 38:23, 39:2, 39:4, 39:8, 39:9, 40:5, 41:5, 41:12, 41:14, 41:18, 41:23, 41:24, 43:2, 43:6, 43:25, 44:8, 44:10, 44:23, 45:1, 45:3, 45:8, 46:11, 46:16, 46:19, 46:23, 46:24, 47:1, 47:2, 47:6, 47:8, 47:10, 47:14, 47:15, 47:16, 47:18, 47:21, 48:6, 48:10, 48:12, 48:13, 48:14, 48:15, 48:18, 48:24, 49:1, 49:2, 49:3, 49:5, 49:16, 49:17, 49:20, 49:23, 50:2, 50:5, 50:11, 50:12
**multimillion** [2] - 32:12, 32:17
**must** [1] - 43:14

## N

**name** [2] - 10:10, 30:7
**names** [1] - 31:17
**nature** [1] - 35:12
**NDA** [1] - 11:16
**necessary** [1] - 45:20
**need** [10] - 7:19, 11:21, 13:2, 13:5, 17:15, 30:20, 35:11, 35:14, 35:15, 46:12
**needed** [1] - 17:17
**needs** [1] - 13:25

negotiated [1] - 6:18
negotiations [1] - 32:8
neutral [3] - 22:20, 23:5, 23:6
never [4] - 8:21, 11:15, 15:11, 30:2
new [4] - 14:11, 14:12, 24:10, 28:2
NEW [1] - 1:1
New [9] - 1:9, 1:15, 1:18, 2:4, 4:23, 11:18, 36:2, 43:21, 44:1
next [7] - 23:7, 27:13, 27:19, 27:20, 41:15, 43:4, 49:14
NFL [1] - 10:10
nice [1] - 19:19
nine [1] - 48:3
NO [1] - 1:4
NOEL [1] - 1:11
normally [1] - 25:7
nothing [8] - 10:16, 17:20, 33:1, 36:9, 36:25, 38:5, 41:6, 46:5
notice [3] - 8:19, 14:25, 23:11
notices [2] - 15:1, 16:9
Novoa [1] - 48:17
nowhere [2] - 11:24, 12:1
number [1] - 9:14

## O

o'clock [3] - 11:9, 34:18, 48:3
objection [3] - 7:22, 30:10, 45:14
obviously [1] - 39:4
OF [1] - 1:1
offered [1] - 39:21
office [2] - 46:16, 47:21
officer [1] - 22:19
Official [1] - 1:24
Ohio [3] - 11:1, 15:13, 28:7
old [1] - 39:25
once [3] - 6:2, 16:1, 32:1
one [24] - 7:8, 7:9, 9:1, 10:15, 10:21, 10:22, 12:24, 13:23, 22:25, 25:12, 26:13, 27:1, 28:23, 29:8, 33:1, 33:17, 33:22, 34:12, 34:13, 37:12, 37:17,

46:24, 48:20
ones [1] - 43:15
open [1] - 3:1
operating [23] - 5:6, 6:23, 7:12, 13:1, 13:16, 16:5, 16:11, 16:12, 18:7, 20:24, 23:2, 23:17, 23:20, 24:1, 31:12, 31:13, 35:20, 36:6, 41:1, 44:19, 44:20, 45:4, 45:17
operations [1] - 24:5
operative [4] - 6:15, 13:15, 14:3
opportunity [9] - 9:7, 9:13, 10:5, 11:21, 15:17, 22:5, 29:24, 35:2, 39:24
opposing [1] - 28:20
option [1] - 43:8
Order [1] - 1:6
order [43] - 4:18, 4:20, 4:25, 5:3, 5:11, 6:1, 6:8, 6:14, 6:19, 6:20, 7:8, 7:9, 7:20, 12:4, 12:22, 17:5, 17:24, 18:12, 18:16, 21:12, 22:4, 22:10, 24:13, 26:7, 27:9, 27:14, 29:15, 31:8, 31:9, 31:10, 34:21, 36:9, 37:1, 40:5, 40:6, 40:9, 40:24, 46:1, 46:5, 47:17, 49:25
ordering [2] - 37:19, 40:4
original [1] - 13:5
ors [1] - 19:16
outstanding [1] - 20:13
overnight [1] - 8:15
own [2] - 7:18, 40:22
owner [2] - 29:4, 32:18

## P

P.C [1] - 1:17
p.m [2] - 1:10, 33:5
p.m. [2] - 3:1, 50:15
page [1] - 39:16
paragraph [4] - 6:15, 13:6, 23:5
parallel [1] - 32:9
parameters [1] - 7:13
part [7] - 11:4, 24:25, 26:1, 28:17, 30:5, 30:9, 32:11
participate [10] - 14:8,

15:3, 16:9, 19:11, 19:23, 21:8, 21:10, 21:18, 31:11, 45:16
particular [8] - 14:7, 16:16, 18:7, 18:25, 19:16, 22:13, 38:6, 43:20
parties [27] - 6:18, 6:24, 21:8, 21:9, 21:14, 25:12, 25:15, 26:10, 32:10, 35:14, 38:13, 40:12, 40:16, 40:19, 40:23, 41:7, 43:12, 43:20, 43:23, 44:14, 44:17, 45:3, 45:15, 46:2, 48:20, 49:9, 49:10
parties' [2] - 48:5
partner [4] - 11:3, 29:22, 32:11, 33:7
partners [2] - 10:22, 32:10
Partners [2] - 3:4, 3:8
PARTNERS [1] - 1:2
partnership [1] - 10:23
party [10] - 9:24, 9:25, 10:2, 25:19, 26:13, 36:4, 36:10, 36:18, 46:5, 46:9
party's [2] - 36:4, 46:9
pass [1] - 14:2
passed [2] - 8:18, 10:9
patented [2] - 10:12, 10:21
Patrick [1] - 39:19
peanuts [2] - 32:13, 32:14
pending [1] - 17:20
people [8] - 29:6, 32:2, 32:6, 32:22, 33:13, 34:14, 38:18, 47:19
Pepperman [2] - 33:5, 33:12
percent [7] - 3:14, 5:17, 5:18, 9:21, 11:17, 29:4, 32:17
period [2] - 44:13, 44:15
person [6] - 21:9, 21:10, 21:22, 33:23, 37:19, 43:19
petition [1] - 4:22
phone [2] - 38:19, 43:19
physically [1] - 38:4
pick [7] - 22:24, 22:25, 33:23, 34:12, 34:13, 49:13, 49:15

picked [1] - 31:21
piece [1] - 28:17
pigeon [1] - 8:15
place [11] - 4:6, 24:7, 27:1, 36:2, 36:7, 36:13, 40:14, 44:1, 46:1, 46:4, 49:17
Plaintiff [2] - 1:3, 1:19
plaintiff [6] - 3:5, 3:22, 4:2, 4:4, 9:11
plaintiffs [1] - 3:8
Plaintiffs [1] - 1:16
plane [2] - 4:23, 11:9
play [1] - 19:19
player [1] - 10:10
playing [1] - 6:9
pleadings [2] - 7:10, 8:14
plus [1] - 37:17
point [4] - 12:18, 29:8, 36:25
pork [6] - 14:13, 15:10, 15:11, 15:15, 15:17, 15:20
position [1] - 5:5
possible [4] - 23:4, 23:21, 31:19, 44:13
possibly [1] - 42:2
posture [2] - 17:16, 20:10
potential [1] - 29:24
potentially [1] - 10:7
power [1] - 43:14
preclude [2] - 41:7
precludes [3] - 36:9, 37:1, 46:5
predicating [1] - 40:9
prefer [1] - 46:21
preferable [1] - 48:9
prejudging [1] - 4:18
preliminary [2] - 25:11, 30:23
premised [1] - 18:23
present [1] - 21:15
presented [1] - 9:7
pretty [1] - 4:18
prevail [1] - 32:2
previously [1] - 39:18
price [2] - 28:15
pricing [7] - 9:5, 14:11, 15:9, 16:8, 28:14, 29:10, 36:22
problem [4] - 12:1, 34:17, 34:20, 44:1
problematic [1] - 5:4
problems [1] - 37:17
procedural [9] - 17:15, 17:16, 17:25, 18:13, 18:24, 20:10,

20:14, 26:20, 34:24
procedurally [1] - 21:25
procedure [1] - 38:6
proceed [4] - 21:25, 24:9, 28:19, 44:12
Proceedings [1] - 50:15
process [3] - 7:16, 21:16, 32:1
product [5] - 10:19, 15:10, 15:11, 15:21, 15:24
productive [2] - 21:13, 21:20
products [1] - 14:14
promptly [1] - 22:12
proper [1] - 17:25
proposal [2] - 11:16, 13:25
propose [1] - 27:20
proposed [12] - 4:17, 4:25, 5:3, 5:11, 6:8, 6:13, 10:5, 12:22, 27:16, 29:15, 31:9, 45:25
provide [2] - 9:4, 40:8
provided [5] - 6:23, 30:2, 39:20
provision [9] - 6:13, 13:15, 14:3, 18:14, 38:9, 42:24, 48:19, 49:11
provisions [5] - 24:1, 25:18, 35:4, 46:8, 50:7
purpose [2] - 22:9, 35:4
purposes [3] - 9:15, 19:18, 48:5
pursuant [2] - 22:17, 50:3
put [10] - 5:14, 5:19, 5:22, 7:11, 7:20, 17:5, 21:6, 28:11, 31:19, 47:10

## Q

quantify [1] - 10:8
questioning [1] - 40:7
questions [1] - 17:12
quickly [6] - 13:14, 23:4, 23:21, 31:19, 41:6, 44:13

## R

radio [1] - 30:20
raises [1] - 15:4

**rare** [1] - 22:5
**Rastelli** [5] - 3:4, 3:8, 10:24, 32:6
**RASTELLI** [1] - 1:2
**Rastellis** [1] - 32:6
**Rastellis'** [1] - 15:18
**rather** [3] - 10:17, 11:6, 25:16
**Raymond** [1] - 3:8
**reach** [1] - 7:16
**reached** [2] - 5:9, 38:13
**reaches** [1] - 13:23
**read** [11] - 4:24, 13:3, 13:5, 13:9, 13:12, 13:19, 16:14, 16:15, 24:10, 27:3
**reading** [1] - 14:4
**ready** [1] - 50:9
**realize** [1] - 17:23
**realized** [1] - 4:7
**really** [8] - 7:12, 7:22, 9:8, 10:11, 28:15, 36:20, 39:11, 46:13
**reason** [9] - 4:19, 8:10, 9:25, 10:9, 17:24, 19:9, 30:17, 32:11, 42:10
**reasonable** [2] - 4:19, 37:23
**reasons** [2] - 17:18, 40:11
**receive** [1] - 29:5
**recognizes** [1] - 23:2
**recollection** [2] - 33:6, 43:25
**record** [3] - 30:6, 30:9, 43:15
**records** [1] - 11:17
**red** [2] - 7:25, 12:9
**refer** [1] - 40:22
**referenced** [1] - 29:6
**references** [1] - 30:6
**referred** [1] - 22:18
**refers** [1] - 17:6
**refusal** [1] - 38:3
**refused** [4] - 14:8, 15:2, 19:4, 39:24
**refuses** [2] - 16:8, 19:10
**refusing** [2] - 19:19, 19:23
**regarding** [2] - 13:15, 45:16
**regular** [1] - 8:16
**relating** [1] - 10:5
**relative** [1] - 9:19
**relief** [5] - 8:22, 8:24, 17:18, 31:1, 31:3
**reluctance** [1] - 26:1

**relying** [3] - 18:14, 23:18
**remaining** [3] - 40:25, 44:21, 45:21
**remember** [3] - 17:15, 17:16, 33:20
**removals** [1] - 30:23
**remove** [2] - 4:23, 10:13
**removed** [1] - 8:10
**Reporter** [1] - 1:24
**representation** [1] - 12:13
**represented** [4] - 10:4, 10:6, 10:22, 39:18
**request** [7] - 19:1, 20:6, 20:21, 21:2, 21:3, 28:23, 29:9
**requested** [10] - 7:25, 8:12, 14:15, 14:25, 22:3, 29:24, 30:2, 30:14, 39:19, 45:1
**requesting** [2] - 26:5, 39:15
**requests** [7] - 16:17, 16:18, 19:17, 22:15, 22:16, 30:19, 37:23
**require** [2] - 19:22, 21:8
**required** [2] - 1:21, 21:1
**requirement** [1] - 30:21
**requirements** [5] - 17:25, 18:13, 18:24, 20:14, 42:1
**reserving** [1] - 18:5
**resolution** [12] - 14:1, 14:2, 14:7, 14:14, 14:18, 15:6, 16:15, 19:22, 22:14, 23:7, 41:22
**resolve** [7] - 7:17, 20:12, 20:22, 22:21, 23:15, 23:21, 24:16, 26:10, 29:9, 40:17, 49:14
**resolved** [6] - 16:2, 18:16, 22:12, 23:4, 40:25, 43:17
**resolving** [1] - 37:1
**respect** [10] - 15:10, 17:13, 18:19, 18:21, 25:24, 28:4, 28:18, 28:20, 44:10, 48:18
**respected** [1] - 33:8
**respectfully** [2] - 12:19, 15:22
**respective** [1] - 32:5
**respond** [7] - 8:7,

12:6, 12:18, 16:25, 17:4, 38:17, 38:23
**responded** [1] - 30:1
**response** [2] - 11:15, 12:11
**retired** [2] - 10:10, 33:25
**reveal** [1] - 9:15
**revenue** [1] - 9:22
**review** [1] - 50:10
**revisions** [1] - 12:21
**rib** [1] - 10:12
**ribs** [1] - 10:14
**ripe** [4] - 6:4, 6:5, 6:6, 37:5
**rise** [2] - 3:2, 50:14
**Road** [1] - 1:18
**ROBERT** [1] - 1:22
**Robert** [1] - 1:24
**Rochester** [1] - 4:23
**room** [1] - 21:15
**Rule** [1] - 49:24
**rule** [5] - 24:25, 28:6, 49:24, 50:4
**ruled** [1] - 12:4
**rules** [1] - 40:22

# S

**Sagemore** [1] - 1:15
**sales** [4] - 9:10, 10:3, 29:11, 32:17
**sat** [1] - 4:10
**scale** [1] - 9:19
**schedule** [1] - 16:7
**Schneider** [4] - 45:9, 45:12, 49:1, 49:12
**Schneider's** [1] - 49:4
**scope** [11] - 11:12, 24:17, 24:24, 25:8, 36:12, 38:12, 42:4, 42:16, 42:18, 43:12, 43:13
**screaming** [1] - 39:3
**screw** [1] - 34:14
**second** [2] - 22:22, 36:13
**secretary** [1] - 47:19
**Section** [11] - 1:21, 6:24, 16:12, 17:6, 22:11, 23:9, 23:13, 24:17, 35:19, 44:19
**section** [2] - 16:12, 21:6
**see** [13] - 8:2, 13:5, 20:9, 20:24, 26:23, 27:25, 30:4, 30:8, 30:23, 31:18, 38:5, 47:21, 48:1
**seeing** [1] - 43:17

**seek** [1] - 18:5
**seeking** [4] - 18:20, 20:19, 36:10, 46:6
**seem** [2] - 7:19, 36:19
**select** [5] - 22:7, 22:19, 23:12, 33:12, 48:20
**selected** [3] - 36:5, 47:3, 47:4
**selects** [1] - 33:22
**sell** [2] - 10:13, 10:14
**sells** [1] - 10:19
**send** [8] - 6:1, 14:24, 25:7, 29:9, 42:9, 45:15, 47:17, 47:23
**sense** [2] - 6:10, 20:11
**sensitive** [2] - 23:3, 38:2
**sent** [13] - 4:17, 7:23, 7:24, 11:13, 15:1, 15:13, 15:14, 16:9, 19:1, 43:15, 44:22, 45:18, 47:24
**sentence** [1] - 23:6
**separate** [3] - 22:15, 26:8, 40:21
**series** [1] - 7:11
**serve** [1] - 22:20
**served** [2] - 8:14, 8:15
**set** [3] - 8:12, 17:18, 35:16
**sets** [1] - 24:8
**setting** [2] - 11:23
**settle** [1] - 7:16
**settled** [2] - 11:5, 11:18
**seven** [1] - 23:14
**several** [2] - 14:15, 16:1
**severely** [1] - 28:10
**Sewell** [1] - 2:4
**shall** [18] - 22:19, 23:6, 28:21, 35:18, 36:2, 36:4, 36:5, 36:7, 36:14, 41:6, 43:22, 45:23, 46:1, 46:2, 46:3, 46:4, 46:9, 47:3
**shame** [1] - 38:2
**SHAPIRO** [1] - 1:14
**Shapiro** [1] - 3:7
**shareholder** [2] - 3:22, 33:11
**Shark** [5] - 10:20, 10:21, 29:5, 32:22
**show** [8] - 4:25, 7:22, 7:24, 15:24, 15:25, 19:2, 29:10, 29:11
**Show** [1] - 1:6
**showed** [2] - 30:13

**showing** [1] - 15:16
**shown** [1] - 42:23
**shred** [1] - 11:19
**side** [4] - 4:8, 4:10, 22:24, 36:19
**sides** [6] - 20:11, 28:1, 35:5, 35:6, 40:12, 47:12
**sign** [4] - 4:19, 48:8, 48:17, 50:10
**signed** [2] - 23:17, 48:1
**significant** [5] - 9:3, 9:14, 9:16, 22:5
**silence** [1] - 30:21
**silent** [1] - 38:14
**similar** [1] - 20:5
**similarly** [1] - 38:2
**simple** [1] - 28:14
**simply** [4] - 25:18, 26:11, 35:3, 45:21
**single** [10] - 9:6, 22:24, 34:3, 34:4, 34:6, 34:9, 41:2, 45:4, 45:7, 45:20
**sit** [2] - 30:20, 32:2
**situation** [15] - 14:17, 14:18, 16:6, 16:22, 17:14, 17:21, 20:5, 20:17, 20:18, 24:4, 26:3, 26:4, 26:24
**six** [1] - 14:25
**size** [1] - 9:22
**Skype** [2] - 21:11, 21:18
**slow** [3] - 28:8, 28:23, 44:5
**so..** [1] - 3:25
**sole** [2] - 36:4, 46:9
**someone** [7] - 19:22, 32:14, 37:23, 38:4, 38:19, 46:13, 49:13
**son** [1] - 39:5
**soon** [1] - 34:20
**sorry** [3] - 4:1, 4:4, 16:14
**sort** [1] - 39:1
**sought** [2] - 31:1, 31:3
**source** [1] - 14:13
**sourcing** [1] - 15:15
**speaking** [1] - 42:3
**specific** [3] - 5:15, 5:20, 6:13
**specifically** [4] - 5:16, 15:14, 24:24, 42:9
**specifics** [1] - 11:14
**speed** [1] - 44:8
**spent** [1] - 12:20
**Stark** [4] - 33:5, 33:6, 33:11

**start** [1] - 4:16
**started** [1] - 9:8
**state** [2] - 22:23, 23:5
**State** [4] - 8:12, 8:16, 30:22, 30:24
**STATES** [2] - 1:1, 1:11
**station** [1] - 44:9
**stay** [2] - 8:23, 47:22
**steps** [1] - 21:1
**stick** [1] - 23:19
**still** [1] - 27:7
**stop** [2] - 7:4, 14:16
**stores** [1] - 9:15
**storm** [1] - 11:10
**Streets** [1] - 1:8
**strict** [1] - 24:8
**strike** [2] - 36:3, 45:20
**strong** [1] - 25:13
**struggling** [1] - 27:25
**stuff** [1] - 7:20
**subject** [3] - 14:14, 14:18, 41:8
**submit** [12] - 5:1, 5:2, 8:1, 12:19, 24:15, 25:2, 25:4, 33:18, 35:18, 45:23, 46:14, 48:2
**submitted** [5] - 5:11, 5:14, 6:9, 7:10, 7:21
**substantial** [1] - 34:24
**success** [1] - 21:14
**successful** [1] - 21:21
**sued** [1] - 3:25
**sufficient** [1] - 48:4
**suggest** [2] - 19:8, 26:9
**suggested** [1] - 33:9
**suggesting** [1] - 40:10
**suggestion** [1] - 25:23
**Suite** [2] - 1:15, 2:3
**supported** [1] - 7:11
**supports** [1] - 23:20
**supposed** [1] - 11:8
**supposedly** [1] - 11:16
**sympathetic** [1] - 39:5
**system** [2] - 22:6, 39:22

## T

**T's** [1] - 32:23
**tail** [1] - 27:8
**Tank** [5] - 10:20, 10:21, 10:22, 29:5, 32:22
**task** [1] - 31:22
**TATE** [1] - 1:22
**Tate** [1] - 1:24

**Tate.com** [1] - 1:24
**technical** [1] - 21:21
**tee** [1] - 18:14
**telephone** [1] - 21:11
**term** [1] - 6:12
**terms** [12] - 5:6, 6:18, 6:20, 7:11, 7:20, 11:24, 11:25, 24:13, 24:20, 26:14, 42:18, 50:3
**test** [1] - 24:5
**THE** [125] - 1:1, 1:11, 3:2, 3:3, 3:10, 3:16, 3:18, 3:24, 4:1, 4:6, 4:12, 4:15, 8:2, 8:6, 9:10, 9:18, 9:21, 12:7, 12:9, 12:15, 12:17, 13:2, 13:5, 13:9, 13:12, 13:19, 13:22, 13:25, 14:9, 14:16, 14:21, 15:4, 16:14, 16:20, 17:2, 17:10, 17:12, 17:23, 18:9, 18:23, 19:8, 19:14, 19:21, 19:25, 20:4, 20:9, 21:4, 21:24, 24:10, 25:6, 25:11, 25:21, 26:1, 26:7, 26:19, 27:3, 27:6, 27:22, 28:25, 29:7, 29:12, 29:14, 29:19, 30:4, 30:8, 30:11, 30:17, 31:4, 31:6, 31:16, 33:2, 33:14, 33:17, 33:21, 34:8, 34:12, 34:16, 34:21, 34:23, 35:8, 35:24, 36:2, 36:23, 36:25, 37:11, 37:14, 37:19, 37:21, 38:1, 38:9, 38:18, 40:2, 40:7, 41:10, 41:17, 41:20, 42:3, 43:5, 43:7, 44:6, 44:17, 44:24, 45:2, 45:11, 46:13, 46:18, 46:21, 47:5, 47:7, 47:9, 47:12, 47:17, 47:23, 48:9, 48:11, 48:16, 48:23, 49:7, 49:19, 49:22, 49:24, 50:3, 50:6, 50:13, 50:14
**theory** [2] - 10:20, 26:8
**thereafter** [1] - 48:22
**they've** [1] - 11:25
**thinking** [1] - 36:17
**thinks** [1] - 37:7
**third** [3] - 23:1, 25:19, 33:23

**third-party** [1] - 25:19
**three** [19] - 6:18, 29:15, 31:14, 31:17, 33:13, 33:25, 34:10, 34:12, 34:13, 35:21, 39:13, 41:14, 41:19, 42:9, 43:3, 45:5, 45:25, 48:20, 48:21
**Thursday** [3] - 4:22, 5:1, 33:5
**timeline** [3] - 24:8, 35:16, 41:11
**timely** [2] - 27:21, 37:7
**timing** [5] - 26:17, 27:6, 31:16, 31:17, 40:10
**Title** [1] - 1:21
**today** [11] - 5:8, 5:12, 5:14, 11:11, 11:24, 27:2, 28:3, 31:18, 37:15, 37:25, 39:2
**together** [1] - 16:10
**tomorrow** [3] - 31:18, 47:25, 48:3
**tonight** [2] - 46:18, 48:1
**track** [1] - 32:9
**train** [2] - 14:9, 44:5
**trained** [1] - 39:25
**training** [1] - 39:21
**transactional** [1] - 11:2
**treated** [1] - 34:11
**tried** [2] - 11:24, 16:7
**triggered** [1] - 42:24
**true** [5] - 1:21, 14:1, 14:21, 15:11, 27:17
**trust** [1] - 15:18
**try** [11] - 7:15, 7:17, 9:20, 9:23, 12:1, 20:22, 27:25, 32:8, 46:16, 46:17, 46:19
**trying** [10] - 9:18, 11:3, 11:25, 16:4, 17:4, 28:25, 33:24, 38:10, 38:11, 40:2
**Tuesday** [1] - 48:4
**tweaks** [1] - 5:8
**two** [30] - 5:15, 5:20, 5:21, 6:4, 6:5, 8:10, 8:18, 8:20, 8:21, 11:9, 12:1, 18:21, 19:3, 20:5, 20:8, 20:20, 22:15, 22:25, 23:11, 23:13, 23:25, 26:9, 26:23, 28:4, 28:22, 32:16, 33:23, 34:12, 34:13, 39:16
**two-page** [1] - 39:16
**type** [1] - 39:5

## U

**U.S** [1] - 1:8
**U.S.C** [1] - 1:21
**ultimate** [1] - 28:16
**unable** [1] - 38:4
**unanimous** [6] - 16:17, 19:1, 19:3, 19:17, 20:6, 22:16
**unanswered** [1] - 39:10
**under** [8] - 5:16, 6:23, 6:24, 20:23, 24:20, 25:16, 42:17, 46:7
**understood** [1] - 41:23
**unfortunately** [1] - 11:8
**UNITED** [2] - 1:1, 1:11
**unless** [2] - 24:7, 38:9
**unnecessary** [1] - 37:5
**unsuccessful** [1] - 26:13
**up** [20] - 7:4, 7:17, 8:12, 10:11, 10:19, 12:9, 13:17, 18:15, 29:10, 29:11, 30:13, 33:5, 41:20, 43:11, 45:11, 45:14, 48:7, 49:20
**urgency** [1] - 27:9
**urgent** [1] - 26:24

## V

**vague** [1] - 45:21
**various** [1] - 15:16
**Ventures** [2] - 3:17, 29:3
**verge** [1] - 9:2
**verified** [1] - 17:18
**versus** [1] - 3:4
**vested** [1] - 21:16
**videoconference** [1] - 21:18
**videoconferencing** [3] - 21:11, 37:13, 38:20
**view** [1] - 8:6
**voluminous** [1] - 39:20
**voluntary** [1] - 7:15
**vote** [11] - 11:20, 14:1, 14:18, 15:6, 19:11, 19:12, 19:13, 19:22, 20:1, 22:14, 23:6
**vs** [1] - 1:4

## W

**Walmart** [10] - 14:17, 16:21, 17:13, 17:21, 18:19, 20:17, 25:24, 28:2, 28:18, 36:20
**wants** [4] - 24:5, 37:6, 43:11, 44:7
**waste** [2] - 22:6, 45:5
**water** [1] - 40:1
**Wednesday** [2] - 11:10, 33:4
**weeds** [2] - 40:15, 42:5
**week** [8] - 4:22, 27:1, 27:13, 27:19, 27:20, 41:15, 43:4, 49:14
**weeks** [6] - 8:10, 8:18, 8:20, 8:21, 12:1, 23:25
**welcome** [2] - 3:10, 3:18
**whole** [1] - 30:12
**widget** [1] - 10:14
**willing** [2] - 8:20, 44:14
**willingness** [1] - 42:8
**withdraw** [1] - 26:11
**word** [4] - 35:11, 35:14, 35:15
**words** [1] - 19:18
**wordsmithing** [1] - 50:9
**worried** [1] - 22:4
**write** [1] - 48:7
**writing** [2] - 16:1, 46:11
**written** [9] - 16:17, 19:1, 19:4, 19:15, 19:17, 22:16, 24:7, 29:9
**wrote** [2] - 5:1, 41:5

## Y

**yelling** [1] - 39:3
**yesterday** [4] - 4:17, 7:21, 8:19, 12:23
**York** [1] - 4:23